### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,[1] | Case No. 18-10601 (MFW) |
| Debtor. | |
| ------------------------------------------------------- | |
| In re: | Adv. Pro. No. _____ |
| AI INTERNATIONAL HOLDINGS (BVI) LTD., | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| MUFG UNION BANK, N.A.; as administrative and collateral agent and UNION BANCAL EQUITIES, INC. | |
| Defendants. | |

AI International Holdings (BVI) Ltd. ("AI International") submits this complaint against

Defendants MUFG Union Bank, N.A.  ("Union Bank") and Union BanCal Equities, Inc. ("Union

Equities" and with Union Bank "Defendants"), and alleges the following:

---

[1]   The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837).  The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013.  Due to the large number of debtors in these cases ("Debtors"), which are being jointly administered for procedural purposes only, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://dm.epiq11.com/twc.

## PRELIMINARY STATEMENT

1.      The Court has entered an order approving the sale ("Sale") of substantially all assets of the Debtors to Lantern Entertainment LLC ("Lantern" and "Sale Order").  [Docket No. 846].  Debtors intend to pay the Defendants the lion's share of the purchase price at the closing of the Sale - apparently on the strength of a purchase price "allocation" term the Defendants demanded be inserted in the asset purchase agreement for the Sale in order to engineer the treatment of their claims as fully secured.  However, the Sale Order expressly provides that the buyer's and sellers' "allocation" is not binding on the Court nor on and any other party-in-interest, and further provides Defendants must disgorge their closing payment upon a successful challenge by a party-in-interest.

2.      AI International is a party-in-interest holding a $46 million secured claim.  By this action, it seeks declaration of the amount to be disgorged by Union Bank and Union Equities.[2] Specifically, it asks the Court to determine, after trial: i) the extent to which Union Bank and Union Equities have valid and enforceable  liens on the property of the estate(s) included in the Sale; ii) the value of Union Bank's and Union Equity's liens on such property; and iii) the amount of the closing payment that exceeded such value and therefore must be disgorged.

3.      Harvey Weinstein established a veritable labyrinth of companies to run his production business.  Following reports of his sexual misconduct, the production business collapsed, and the companies filed bankruptcy.

4.      The Debtors had incurred loans secured by their assets.  There was no single lender with a senior lien on substantially all assets of the Weinstein companies.  Rather, the

---

[2]   AI International anticipates that the Sale will have closed and the proceeds will have been disbursed to Defendants by the time of trial.

Debtors had taken loans secured by various pools of assets, which included intellectual property, rights under distribution agreements, and equity in subsidiaries.  The Defendants, for example, have liens only upon the assets of one of the Debtors, TWC Domestic LLC.

5.    After filing bankruptcy, the Debtors proposed, and the Court approved, a sale of substantially all of their assets to a buyer for $310 million, subject to adjustment under the terms of the asset purchase agreement to the buyer.  The sale proceeds will derive from the value of the various assets and classes of assets to be sold by the multiple Debtors.  Under the Sale Order, the Court has reserved the determination of the allocation of the purchase price among the estates of the Debtors.  To that end, it has ordered that the term of the asset purchase agreement for the Sale purporting to allocate a portion of the purchase price is not binding on the Court or parties-in-interest other than the buyers and the sellers.

6.    AI International brings this action to ensure that Defendants do not retain proceeds of the Sale beyond what they are entitled to.  Under the Bankruptcy Code, Defendants' claims are secured in the proceeds of the Sale only to the extent of the value of the assets included in the Sale on which they have valid and enforceable liens.

7.    AI International has a direct stake in the outcome of this action.  If the Defendants are permitted to retain more money from the Sale than they are entitled to, AI International's recoveries on account of its claims will be unjustly diminished.

8.    This action constitutes a timely "challenge" under the order approving debtor-in-possession financing in these cases, as discussed below.  AI International is an aggrieved party-in-interest with standing to make this challenge without leave of Court.[3]

---

[3]    AI International is filing this complaint at this time to ensure its "challenge" is timely and is prepared to agree to temporarily stay this litigation pending the closing of the Sale, so that

## PARTIES

9.      AI International is a company formed under the laws of the British Virgin Islands with a business address at 40 West 57th Street, 28th Floor, New York, New York 10019.

10.     Defendant Union Bank is a national banking association with headquarters located at 400 California Street, San Francisco, California 94104.  Union Bank was formerly known as Union Bank, N.A.

11.     Upon information and belief, Union Equities is an active corporation registered in the State of California located at 445 South Figueroa Street, Los Angeles, California 90071.  Its mailing address is 400 California Street, MC 1-001-16, MUFG Union Bank, N.A. San Francisco, California 94104.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  AI International brings this Complaint pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), §§ 105(a), 502, and 506 of the United States Code (the "Bankruptcy Code"), and 28 U.S.C. § 2201.

13.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O).  Venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

the exact amount of Sale proceeds are known.  AI International is not seeking a determination of how much of the Sale proceeds it is entitled to an account of its own claims, but reserves the right to seek appropriate relief at a later time if it cannot reach a consensual agreement with the Debtors and Official Committee of Unsecured Creditors.

## FACTUAL ALLEGATIONS

## II.   THE WEINSTEIN COMPANIES, THE PARTIES, AND THE VARIOUS LOAN DOCUMENTS

14.   The Weinstein Company Holdings, LLC ("Holdings") is the parent holding company of, among others, Weinstein Television, LLC ("WTV"), The Weinstein Company, LLC ("TWC"), and TWC Borrower 2016, LLC ("TWC Borrower").   TWC is the parent company of Weinstein Global Film Corp. ("WGFC") and TWC Domestic, LLC ("TWC Domestic").

15.   AI International is the lender under a Secured Full Recourse Promissory Note dated as of September 29, 2016 (as amended, modified, or supplemented, the "AI International Note").  A copy of the AI International Note is attached hereto as **Exhibit A**.  Pursuant to the AI International Note, AI International agreed to loan $45 million to TWC Borrower ("AI International Loan").   The AI International Note is guaranteed by Holdings and Harvey Weinstein pursuant to a Guarantee dated September 29, 2016 by Holdings and a Guarantee dated September 29, 2016 by Harvey Weinstein (collectively, "AI International Guarantees").   The AI International Guarantees are attached hereto as **Exhibit B**.  The AI International Loan is secured by a Pledge and Security Agreement dated September 29, 2016 ("AI International PSA") with TWC, Holdings and WGFC, which provides as collateral: i) all of TWC's rights, title, and interest in all issued and outstanding capital stock of WGFC; ii) all of Holdings' right, title, and interest in all issued and outstanding membership interests in WTV;[4] and iii) WGFC's right, title, and interest in the distribution and exploitation rights to the "Foreign Film Rights Collateral" as defined in the AI International PSA.  The AI International PSA is attached hereto as **Exhibit C**.

---

[4] AI International's security interest in Holdings' membership interests in WTV is junior to that of Bank of America pursuant to a Subordination Agreement dated September 29, 2016.

16.     Each of Holdings and TWC scheduled AI International as a secured creditor holding a contingent and unliquidated, but undisputed claim ("<u>Holdings Schedule D</u>" and "<u>TWC Schedule D</u>").  [Docket Nos. 299, 320].  Copies of the relevant portions of Holdings Schedule D and TWC Schedule D are attached hereto as **<u>Exhibits D and E</u>**.  TWC Borrower scheduled AI International as a secured creditor holding a contingent and unliquidated, but undisputed, claim of $45,528,134.18 ("<u>TWC Borrower Schedule D</u>").  A copy of the relevant portions of TWC Borrower Schedule D is attached hereto as **<u>Exhibit F</u>**.

17.     AI International filed proofs of claims ("<u>POCs</u>") against Holdings, TWC, WGFC, and TWC Borrower, asserting a secured claim of $46,336,790.99 ("<u>Claim</u>") based on the AI International Note and the AI International PSA.  The POCs are attached hereto as **<u>Exhibit G - J</u>**.

18.     Union Bank is the administrative agent and letter of credit issuer under a Second Amended and Restated Credit and Security Agreement dated September 30, 2013 among Union Bank, TWC Domestic and the lenders referred to therein ("<u>Union Bank Pre-Petition Agreement</u>").  TWC Domestic's obligations under the Union Bank Pre-Petition Agreement are guaranteed by TWC and secured by a first-priority lien on substantially all of TWC Domestic's assets and a senior pledge of TWC's equity in TWC Domestic.  TWC Domestic scheduled Union Bank as a secured creditor holding an unliquidated claim of $156,411,347 ("<u>TWC Domestic Schedule D</u>").  A copy of the relevant portions of the TWC Domestic Schedule D is attached hereto as **<u>Exhibit K</u>**.  TWC scheduled Union Bank as a secured creditor holding a contingent and unliquidated claim in an unknown amount.  A copy of the relevant portion of the TWC Schedule D is attached hereto as **<u>Exhibit L</u>**.

19.     Union Bank has not filed a proof of claim.

6

20.     Union Bank is also the administrative and collateral agent under the Debtor-in-Possession Loan and Security Agreement ("<u>DIP Loan Agreement</u>").  Pursuant to the DIP Loan Agreement, Holdings, TWC, and TWC Domestic may borrow up to $25 million from specified lenders ("<u>DIP Loan</u>").  The DIP Loan is secured by all present and after-acquired property of the Debtors, excluding avoidance actions under Chapter 5 of the Bankruptcy Code, commercial tort claims belonging to the Debtors or their estates, any claims arising out of the conduct of Harvey Weinstein, Robert Weinstein, or their non-debtor affiliates, and any claims against any party for contribution, reimbursement, or indemnification.  The Court approved the DIP Loan Agreement and entered a final order on April 19, 2018 ("<u>Final DIP Order</u>").  The Final DIP Order is attached hereto as **<u>Exhibit M</u>**.

21.     Union Equities is the administrative agent under a Credit and Security Agreement dated October 9, 2015 (as amended), among Union Equities, TWC Domestic and lenders referred to therein ("<u>Union Equities Pre-Petition Agreement</u>").  TWC Domestic's obligations are secured by a junior lien on substantially all of TWC Domestic's assets.  TWC Domestic scheduled Union Equities as a secured creditor holding an unliquidated claim for $15,644,238.54.  A copy of the relevant portions of the TWC Domestic Schedule D is attached hereto as **<u>Exhibit N</u>**.

22.     Union Equities has not filed a proof of claim.

## III.     THE PROCEEDINGS IN THIS CASE

### A.     THE BANKRUPTCIES

23.     On March 19, 2018 ("<u>Petition Date</u>"), Holdings, TWC, and various of their affiliates, including TWC Borrower, filed petitions for relief under Chapter 11 of the Bankruptcy Code.  [Docket No. 1].

### i.    THE DIP LOAN

24.    On March 20, 2018, the Debtors filed a motion for orders approving, among other things, post-petition financing ("DIP Loan Motion").  [Docket No. 11].  The Debtors attached a copy of the DIP Loan Agreement to the DIP Loan Motion.

25.    On March 20, 2018, the Court entered an order granting the DIP Loan Motion on an interim basis and scheduling a final hearing ("Interim DIP Loan Order").  [Docket No. 76].

26.    On April 17, 2018, the Court entered the Final DIP Order, which is attached hereto as **Exhibit M**.  [Docket No. 267].  In the Final DIP Order, the Court ordered:

> **Investigation Rights.**  The Committee shall have until April 27, 2018 . . . and all other non-debtor parties-in-interest . . . shall have seventy-five (75) days from the Petition Date (each, as applicable, the "Investigation Termination Date") to investigate the validity, perfection and enforceability of the Pre-Petition Liens and the Pre-Petition Obligations as well as the junior liens held by [Union Equities] . . . and to assert any other claims or causes of action against the Pre-Petition Secured parties or [Union Equities].  The Committee or other non-debtor party in-interest . . . shall have only until the applicable Investigation Termination Date to file such objection or claim . . . setting forth the basis of any such challenge, claim or cause of action; provided, however, that nothing contained in the DIP Loan [d]ocuments or this Final [DIP] Order shall be deemed to confer standing on any party-in-interest to commence a challenge.

Final DIP Order ¶ 16.

27.    In paragraph 28 of the Final DIP Order, the Court ordered:

> **Sale Proceeds.**  Unless . . . a [c]hallenge is asserted prior to the applicable Investigation Termination Date and sustained by the Court prior to the closing of any sale of the Pre-Petition Collateral, the DIP Secured Parties, the Pre-Petition Secured Parties, and the UBE Secured Parties shall, subject to satisfaction of Permitted Priority Liens from and to the extent of the proceeds of collateral securing such Permitted Priority Liens, be paid in cash upon the closing of a sale of Pre-Petition Collateral, *subject to disgorgement to the extent any [c]hallenge asserted in accordance with the terms of this Final [DIP] Order is ultimately sustained by the Court*.

Final DIP Order ¶ 28 (emphasis added).

ii.      **THE SALE MOTION**

28.     On March 20, 2018, the Debtors filed a motion to approve bidding procedures for the sale of substantially all of their assets, to schedule an auction, and to ultimately approve the sale of substantially all of their assets ("Sale Motion").  [Docket No. 8].  The Debtors sought approval of an asset purchase agreement with Lantern ("Lantern APA") attached to the Sale Motion, subject to higher and better offers.  Under the Lantern APA, Lantern would purchase substantially all of the Debtors' assets for $310 million, subject to certain adjustments, payment of certain cure amounts, and assumption of certain liabilities.[5]  Section 2.7 of the Lantern APA provides:

> Aggregate Purchase Price.  . . . Each of Buyer and each Seller Party hereby acknowledges and agrees that the Cash Purchase Price shall be allocated such that (i) the value of the Purchased Assets that comprise the TWC Domestic Collateral is greater than the sum of (v) the TEC Domestic Debt (in the amount, as of the date hereof, of approximately $175 million . . ., plus (w) the principal amount outstanding under the DIP [Loan] Agreement . . . provided that such principal amount, for purposes of this Section . . . shall not be in excess of $26 million, plus (x) all Guild Residuals secured by the TWC Domestic Collateral and accrued prior to the Petition Date (in the amount, as of the date hereof, of approximately $8 million), plus (y) the amount of all interest accrued and unpaid after the Petition Date through the Closing Date on the amount described in the preceding clauses (i)(v) through (i)(x), minus (z) any principal payments on the amounts described in the preceding clauses (i)(v) through (i)(x) after the Petition Date and through the Closing Date.

29.     On April 6, 2018, the Court entered an order approving the Debtors' proposed bidding procedures and scheduling an auction on May 4, 2018.  [Docket No. 190].

---

[5]   AI International reserves all rights to amend this Complaint for any reason to the extent permitted by law, including if the Debtors and Lantern execute any amendments to the Lantern APA.

30.      On May 1, 2018, the Debtors filed a notice stating that the auction had been cancelled and designating Lantern as the successful bidder.  [Docket No. 653].

31.      On May 9, 2018, the Court entered the Sale Order granting the Sale Motion and approving the Sale.  [Docket No. 846].  A copy of the Sale Order is attached hereto as **Exhibit P**. In paragraph 26 of the Sale Order, the Court ordered that "[t]he proceeds of the Sale Transaction remaining after the payments expressly authorized by this Order shall be segregated and shall not be used absent further order of the Court."  In paragraph 62, the Court ordered: "[t]he allocation of Cash Purchase Price set forth in section 2.7 of the [Lantern] APA shall not be binding on any party in interest other than as between the Debtors and the Purchasers and shall not bind the Court in determining the allocation of the remaining proceeds of the Sale Transaction."

**B.      ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

32.      The principal source of distributions to AI International and other prepetition secured and unsecured creditors will be the proceeds from the Sale.  Before any such distributions  may be made, the Court must allocate the purchase price among the assets sold by the various Debtors, and determine the extent of any liens on such assets.

33.      There has been no final determination of the validity, priority, or extent of Union Bank's or Union Equities' liens in connection with the DIP Loan Agreement or the Sale.

34.      In order to determine whether any of the proceeds to be paid to Union Bank and Union Equities at the closing are subject to disgorgement, it is necessary for the Court to determine: i) whether and to what extent Union Bank and Union Bank Equities have valid and enforceable liens extending to assets that are included in the Sale; and ii) the value of any such assets.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**Determination of the Extent of the Lien Claimed by Union Bank**
**[11 U.S.C. § 506; Bankruptcy Rule 7001(2)]**
**(Against Union Bank)**

35.　　AI International restates the allegations in paragraphs 1 through 34 above.

36.　　Pursuant to Bankruptcy Code § 506(a), Union Bank's claim is secured only to the extent "of the value of [its] interest in the estate's interest in such property."

37.　　AI International is entitled to a determination of the extent to which the assets of the estate of TWC Domestic which were included in the Sale, if any, were subject to the lien claimed by Union Bank.

38.　　AI International is entitled to a determination of whether the lien claimed by Union Bank in the assets of TWC Domestic which were included in the Sale, if any, was valid, perfected and enforceable with respect to such assets.

39.　　AI International is entitled to a valuation of the assets of TWC Domestic which were subject to a valid, perfected and enforceable lien in favor of Union Bank, if any, in order to determine the secured status of Union Bank's claim to the proceeds of the Sale.

**COUNT TWO**

**Determination of the Extent of the Lien Claimed by Union Equities**
**[11 U.S.C § 506; Bankruptcy Rule 7001(2)]**
**(Against Union Equities)**

40.　　AI International restates the allegations in paragraphs 1 through 39 above.

41.　　Pursuant to Bankruptcy Code § 506(a), Union Equities' claim is secured only to the extent "of the value of [its] interest in the estate's interest in such property."

42.    AI International is entitled to a determination of the extent to which the assets of the estate of TWC Domestic which were included in the Sale, if any, were subject to the lien claimed by Union Equities.

43.    AI International is entitled to a determination of whether the lien claimed by Union Equities in the assets of TWC Domestic which were included in the Sale, if any, was valid, perfected and enforceable with respect to such assets.

44.    AI International is entitled to a valuation of the assets of TWC Domestic which were subject to a valid, perfected and enforceable lien in favor of Union Equities, if any, in order to determine the secured status of its claim on the proceeds of the Sale.

**COUNT THREE**

**Objection to Claim**
**[11 U.S.C. § 502; Bankruptcy Rule 3007]**
**(Against Union Bank)**

45.    AI International restates the allegations in paragraphs 1 through 44 above.

46.    TWC Domestic scheduled Union Bank as a secured creditor holding an unliquidated claim.

47.    TWC scheduled Union Bank as a secured creditor holding a contingent and unliquidated claim.

48.    Union Bank has not filed any proof of claim in any of the Debtors' cases.

49.    AI International is thus entitled to a judgment that Union Bank's claim is disallowed and that Union Bank may not be treated as a creditor with respect to any claim for the purposes of voting and distribution; or, in the alternative, that Union Bank's claim be disallowed as a secured claim to the extent it exceeds the value of Union Bank's lien on the assets of the estate of TWC Domestic.

## COUNT FOUR

**Objection to Claim**
**[11 U.S.C. § 502; Bankruptcy Rule 3007]**
**(Against Union Equities)**

50.     AI International the allegations in paragraphs 1 through 49 above.

51.     TWC Domestic scheduled Union Equities as a secured creditor holding an unliquidated claim.

52.     Union Equities has not filed any proof of claim in any of the Debtors' cases.

53.     AI International is thus entitled to a judgment that Union Equities' claim is disallowed and that Union Equities may not be treated as a creditor with respect to any claim for the purposes of voting and distribution; or, in the alternative, that Union Equities' claim be disallowed as a secured claim to the extent it exceeds the value of Union Equities' lien on the assets of the estate of TWC Domestic.

## COUNT FIVE

**Declaration of the Amount of Sale Proceeds Required to be Disgorged by Union Bank**
**[28 U.S.C. § 2201; Bankruptcy Rule 7001(9)]**
**(Against Union Bank)**

54.     AI International restates the allegations in paragraphs 1 through 53 above.

55.     Union Bank's claim is a secured claim only to the extent of the value of its interest in property of the estate of TWC Domestic.

56.     Union Bank is not entitled to retain any money, property, or proceeds from the Sale that exceed the value of its interest in the property of TWC Domestic subject to a valid, perfected, and enforceable lien in favor of Union Bank, if any, on assets which were included in the Sale.

57.     Union Bank is required to disgorge any money, property, or proceeds it may receive upon closing of the Sale to the extent it exceeds the value of the property of the estate of

13

TWC Domestic subject to a valid, perfected, and enforceable lien in favor of Union Bank, if any, which were included in the Sale.

58.     AI International is entitled to a judgment declaring that Union Bank must disgorge the excess of the money, property, or proceeds it receives at the closing of the Sale over the value of the assets of the estate of TWC Domestic included in the Sale which are subject to a valid, perfected, and enforceable lien in favor of Union Bank, in an amount to be proved at trial.

## COUNT SIX

### Declaration of the Amount of Sale Proceeds Required to be Disgorged by Union Equities
### [28 U.S.C. § 2201; Bankruptcy Rule 7001(9)]
### (Against Union Equities)

59.     AI International restates the allegations in paragraphs 1 through 58 above.

60.     Union Equities' claim is a secured claim only to the extent of the value of its interest in property of the estate of TWC Domestic.

61.     Union Equities is not entitled to retain any money, property, or proceeds from the Sale that exceed the value of its interest in the property of TWC Domestic subject to a valid, perfected, and enforceable lien in favor of Union Equities, if any, which were included in the Sale.

62.     Union Equities is required to disgorge any money, property, or proceeds it may receive upon closing of the Sale to the extent it exceeds the value of the property of the estate of TWC Domestic subject to a valid, perfected, and enforceable lien in favor of Union Equities, if any, which were included in the Sale.

63.     AI International is entitled to a judgment declaring that Union Equities must disgorge the excess of the money, property, or proceeds it receives at the closing of the Sale over the value of the assets of the estate of TWC Domestic included in the Sale which are subject to a

valid, perfected, and enforceable lien in favor of Union Equities, in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully seeks from this Court:

64.     A judgment determining the extent to which the assets of TWC Domestic, if any, included in the Sale were subject to valid, perfected, and enforceable liens in favor of Union Bank and Union Equities.

65.     A judgment valuing the assets of TWC Domestic included in the sale that were subject to valid, perfected, and enforceable liens in favor of Union Bank and Union Equities, and thereby determining the secured status of their respective claims under Section 506(a) of the Bankruptcy Code.

66.     A judgment disallowing the claims of Union Bank and Union Equities and that Union Bank and Union Equities are not entitled to vote or to distribution, or, in the alternative, disallowing the claims of Union Bank and Union Equities as secured claims to the extent such claims exceed the value of their respective liens on property of the estate of TWC Domestic.

67.     A judgment declaring that Union Bank and Union Equities must disgorge the excess of the proceeds of the Sale paid to them at closing over the value of the assets of the estate of TWC Domestic which were included in the Sale and which are subject to valid, perfected, and enforceable liens, in an amount to be proved at trial.


*[Remainder of Page Intentionally Left Blank]*

68.     Such other relief as the Court deems appropriate.

DATED:    Wilmington, Delaware                    Respectfully submitted,
          June 2, 2018

                                        By:   */s/ Davis Lee Wright*
                                              Natalie D. Ramsey
                                              Davis Lee Wright
                                              MONTGOMERY MCCRACKEN WALKER &
                                              RHOADS LLP
                                              1105 North Market Street, 15th Floor
                                              Wilmington, DE 19801
                                              (302) 504-7828
                                              nramsey@mmwr.com
                                              dwright@mmwr.com

                                              Susheel Kirpalani (admitted *pro hac vice*)
                                              Scott Shelley (admitted *pro hac vice*)
                                              QUINN EMANUEL URQUHART
                                              & SULLIVAN LLP
                                              51 Madison Avenue, 22nd Floor
                                              New York, New York 10010
                                              susheelkirpalani@quinnemanuel.com
                                              scottshelley@quinnemanuel.com

                                              Bennett Murphy (admitted *pro hac vice*)
                                              Jennifer Nassiri (admitted *pro hac vice*)
                                              QUINN EMANUEL URQUHART
                                              & SULLIVAN LLP
                                              865 S. Figueroa St., 10th Floor
                                              Los Angeles, California 90017
                                              (213) 443-3668
                                              bennettmurphy@quinnemanuel.com
                                              jennifernassiri@quinnemanuel.com

                                              *Counsel to AI International Holdings (BVI) Ltd.*