## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,[1] | Case No. 18-10601 (MFW) |
| Debtor. | |
| -------------------------------------------------------- | |
| In re: | |
| AI INTERNATIONAL HOLDINGS (BVI) LTD., | Adv. Pro. No. 18-50486 (MFW) |
| Plaintiff, | |
| -against- | |
| MUFG UNION BANK, N.A.; as administrative and collateral agent and UNION BANCAL EQUITIES, INC. | |
| Defendants. | |

### ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS MUFG UNION BANK, N.A. AND UNIONBANCAL EQUITIES, INC.

Defendants MUFG Union Bank, N.A. and UnionBanCal Equities, Inc. (together, the

"Defendants"), by and through undersigned counsel, hereby answer the Complaint [Adv. Docket

No. 1][2] filed by AI International Holdings (BVI) Ltd. ("Plaintiff") as follows:

---

[1] 1 The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases ("Debtors"), which are being jointly administered for procedural purposes only, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://dm.epiq11.com/twc.

[2] Capitalized terms used but not otherwise defined in this Answer shall have the meanings ascribed to them in the Complaint.

# PRELIMINARY STATEMENT[3]

1.     The Court has entered an order approving the sale ("Sale") of substantially all assets of the Debtors to Lantern Entertainment LLC ("Lantern" and "Sale Order"). [Docket No. 846]. Debtors intend to pay the Defendants the lion's share of the purchase price at the closing of the Sale - apparently on the strength of a purchase price "allocation" term the Defendants demanded be inserted in the asset purchase agreement for the Sale in order to engineer the treatment of their claims as fully secured. However, the Sale Order expressly provides that the buyer's and sellers' "allocation" is not binding on the Court nor on and any other party-in-interest, and further provides Defendants must disgorge their closing payment upon a successful challenge by a party-in-interest.

**ANSWER**: Defendants admit that the Court entered the Sale Order approving the Sale of substantially all assets of the Debtors to Lantern.  Defendants otherwise deny the allegations of Paragraph 1.  By way of further response, Defendants state that the Sale Order is the best evidence of its contents and Defendants deny any allegations in Paragraph 1 to the extent they do not fully and accurately characterize the contents of the Sale Order.

2.     AI International is a party-in-interest holding a $46 million secured claim. By this action, it seeks declaration of the amount to be disgorged by Union Bank and Union Equities.[4] Specifically, it asks the Court to determine, after trial: i) the extent to which Union Bank and Union Equities have valid and enforceable liens on the property of the estate(s) included in the Sale; ii) the value of Union Bank's and Union Equity's liens on such property; and iii) the amount of the closing payment that exceeded such value and therefore must be disgorged.

**ANSWER**: Paragraph 2 consists of a summary of the nature of the action and argument. To the extent a response is required, Defendants deny the allegations in Paragraph 2.

3.     Harvey Weinstein established a veritable labyrinth of companies to run his production business. Following reports of his sexual misconduct, the production business collapsed, and the companies filed bankruptcy.

---

[3] The headings and sub-headings throughout the Complaint do not constitute well-pleaded allegations of fact and therefore require no response.  To the extent a response is deemed required, they are denied.

[4] Footnote 2 of the Complaint:  AI International anticipates that the Sale will have closed and the proceeds will have been disbursed to Defendants by the time of trial.

**ANSWER:** Defendants admit that the Sale has closed and that proceeds have been disbursed to Defendants pursuant to the terms and conditions of the Final DIP Order and the Sale Order.  The remaining allegations in footnote 2 of the Complaint are denied.

01:23514689.4

**ANSWER**: Admitted upon information and belief.

4.    The Debtors had incurred loans secured by their assets. There was no single lender with a senior lien on substantially all assets of the Weinstein companies. Rather, the Debtors had taken loans secured by various pools of assets, which included intellectual property, rights under distribution agreements, and equity in subsidiaries. The Defendants, for example, have liens only upon the assets of one of the Debtors, TWC Domestic LLC.

**ANSWER**: Defendants admit that the Debtors had loans secured by their assets, which included intellectual property, rights under distribution agreements, and equity in subsidiaries. Defendants otherwise deny the allegations of Paragraph 4.

5.    After filing bankruptcy, the Debtors proposed, and the Court approved, a sale of substantially all of their assets to a buyer for $310 million, subject to adjustment under the terms of the asset purchase agreement to the buyer. The sale proceeds will derive from the value of the various assets and classes of assets to be sold by the multiple Debtors. Under the Sale Order, the Court has reserved the determination of the allocation of the purchase price among the estates of the Debtors. To that end, it has ordered that the term of the asset purchase agreement for the Sale purporting to allocate a portion of the purchase price is not binding on the Court or parties-in-interest other than the buyers and the sellers.

**ANSWER**: Defendants admit that the Court approved a sale of substantially all of the Debtors' assets and that the sale proceeds were derived from the Debtors' assets.  Defendants deny the remaining allegations in Paragraph 5.  By way of further response, Defendants state that the Lantern APA and Sale Order are the best evidence of their respective contents and Defendants deny any allegations in Paragraph 5 to the extent they do not fully and accurately characterize the contents of the Lantern APA or Sale Order.

6.    AI International brings this action to ensure that Defendants do not retain proceeds of the Sale beyond what they are entitled to. Under the Bankruptcy Code, Defendants' claims are secured in the proceeds of the Sale only to the extent of the value of the assets included in the Sale on which they have valid and enforceable liens.

**ANSWER**: Defendants deny the allegations made in the first sentence of Paragraph 6. The remaining allegations in Paragraph 6 constitute legal conclusions to which no response is required.

01:23514689.4

7.      AI International has a direct stake in the outcome of this action. If the Defendants are permitted to retain more money from the Sale than they are entitled to, AI International's recoveries on account of its claims will be unjustly diminished.

**ANSWER**: Denied.

8.      This action constitutes a timely "challenge" under the order approving debtor-in-possession financing in these cases, as discussed below. AI International is an aggrieved party-in-interest with standing to make this challenge without leave of Court.[5]

**ANSWER**: Denied.

## PARTIES

9.      AI International is a company formed under the laws of the British Virgin Islands with a business address at 40 West 57th Street, 28th Floor, New York, New York 10019.

**ANSWER**: Defendants are without information sufficient to form a belief as to the truth

of the allegations of Paragraph 9 and therefore deny them.

10.      Defendant Union Bank is a national banking association with headquarters located at 400 California Street, San Francisco, California 94104. Union Bank was formerly known as Union Bank, N.A.

**ANSWER**: Defendants admit that Union Bank has an office located at the address listed

in Paragraph 10 and that it was formerly known as Union Bank, N.A.  By way of further

response, Defendants state that the address of its headquarters and principal place of business is

1251 Avenue of the Americas, New York, New York 10020.

11.      Upon information and belief, Union Equities is an active corporation registered in the State of California located at 445 South Figueroa Street, Los Angeles, California 90071. Its mailing address is 400 California Street, MC 1-001-16, MUFG Union Bank, N.A. San Francisco, California 94104.

---

[5] Footnote 3 of the Complaint:  AI International is filing this complaint at this time to ensure its "challenge" is timely and is prepared to agree to temporarily stay this litigation pending the closing of the Sale, so that the exact amount of Sale proceeds are known. AI International is not seeking a determination of how much of the Sale proceeds it is entitled to an account of its own claims, but reserves the right to seek appropriate relief at a later time if it cannot reach a consensual agreement with the Debtors and Official Committee of Unsecured Creditors.

**ANSWER:** Defendants deny that the Complaint constitutes a timely "Challenge" under the Final DIP Order.  The remaining allegations of footnote 3 in the Complaint are also denied.

01:23514689.4

**ANSWER**: Defendants admit the allegations in the first sentence of Paragraph 11.  The remaining allegations in Paragraph 11 are denied.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. AI International brings this Complaint pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), §§ 105(a), 502, and 506 of the United States Code (the "Bankruptcy Code"), and 28 U.S.C. § 2201.

**ANSWER**: The allegations in Paragraph 12 constitute legal conclusions to which no response is required.

13.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O). Venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**ANSWER**: The allegations in Paragraph 13 constitute legal conclusions to which no response is required.  Pursuant to Bankruptcy Rule 7012(b) and Local Rule 7012-1, Defendants hereby give notice that they consent to entry of final orders or judgments by the Bankruptcy Court with respect to the claims asserted in the Complaint.

## FACTUAL ALLEGATIONS

## II.    THE WEINSTEIN COMPANIES, THE PARTIES, AND THE VARIOUS LOAN DOCUMENTS

14.     The Weinstein Company Holdings, LLC ("Holdings") is the parent holding company of, among others, Weinstein Television, LLC ("WTV"), The Weinstein Company, LLC ("TWC"), and TWC Borrower 2016, LLC ("TWC Borrower"). TWC is the parent company of Weinstein Global Film Corp. ("WGFC") and TWC Domestic, LLC ("TWC Domestic").

**ANSWER**: Admitted upon information and belief.

15.     AI International is the lender under a Secured Full Recourse Promissory Note dated as of September 29, 2016 (as amended, modified, or supplemented, the "AI International Note"). A copy of the AI International Note is attached hereto as **Exhibit A**. Pursuant to the AI International Note, AI International agreed to loan $45 million to TWC Borrower ("AI International Loan"). The AI International Note is guaranteed by Holdings and Harvey Weinstein pursuant to a Guarantee dated September 29, 2016 by Holdings and a Guarantee dated September 29, 2016 by Harvey Weinstein (collectively, "AI International Guarantees"). The AI International Guarantees are attached hereto as **Exhibit B**. The AI International Loan is secured by a Pledge and Security Agreement dated September 29, 2016 ("AI International PSA") with

TWC, Holdings and WGFC, which provides as collateral: i) all of TWC's rights, title, and interest in all issued and outstanding capital stock of WGFC; ii) all of Holdings' right, title, and interest in all issued and outstanding membership interests in WTV;[6] and iii) WGFC's right, title, and interest in the distribution and exploitation rights to the "Foreign Film Rights Collateral" as defined in the AI International PSA. The AI International PSA is attached hereto as **Exhibit C**.

**ANSWER**: Defendants are without information sufficient to form a belief as to the truth of the allegations of Paragraph 15 and therefore deny them.

16.    Each of Holdings and TWC scheduled AI International as a secured creditor holding a contingent and unliquidated, but undisputed claim ("Holdings Schedule D" and "TWC Schedule D"). [Docket Nos. 299, 320]. Copies of the relevant portions of Holdings Schedule D and TWC Schedule D are attached hereto as **Exhibits D and E**. TWC Borrower scheduled AI International as a secured creditor holding a contingent and unliquidated, but undisputed, claim of $45,528,134.18 ("TWC Borrower Schedule D"). A copy of the relevant portions of TWC Borrower Schedule D is attached hereto as **Exhibit F**.

**ANSWER**: Defendants admit that Plaintiff is listed in Holdings Schedule D, TWC Schedule D, and TWC Borrower Schedule D.  By way of further response, Defendants state that Holdings Schedule D, TWC Schedule D, and TWC Borrower Schedule D are the best evidence of their respective contents and Defendants deny any allegations in Paragraph 16 to the extent they do not fully and accurately characterize the contents of Holdings Schedule D, TWC Schedule D or TWC Borrower Schedule D.

17.    AI International filed proofs of claims ("POCs") against Holdings, TWC, WGFC, and TWC Borrower, asserting a secured claim of $46,336,790.99 ("Claim") based on the AI International Note and the AI International PSA. The POCs are attached hereto as **Exhibit G - J**.

**ANSWER**: Defendants admit upon information and belief that Plaintiff filed the POCs. By way of further response, Defendants state that the POCs are the best evidence of their respective contents and Defendants deny any allegations in Paragraph 17 to the extent they do not fully and accurately characterize the contents of the POCs.

---

[6] Footnote 4 of the Complaint:  AI International's security interest in Holdings' membership interests in WTV is junior to that of Bank of America pursuant to a Subordination Agreement dated September 29, 2016.

**ANSWER:**  The allegations contained in footnote 4 of the Complaint constitute legal conclusions to which no response is required.

18.     Union Bank is the administrative agent and letter of credit issuer under a Second Amended and Restated Credit and Security Agreement dated September 30, 2013 among Union Bank, TWC Domestic and the lenders referred to therein ("Union Bank Pre-Petition Agreement"). TWC Domestic's obligations under the Union Bank Pre-Petition Agreement are guaranteed by TWC and secured by a first-priority lien on substantially all of TWC Domestic's assets and a senior pledge of TWC's equity in TWC Domestic. TWC Domestic scheduled Union Bank as a secured creditor holding an unliquidated claim of $156,411,347 ("TWC Domestic Schedule D"). A copy of the relevant portions of the TWC Domestic Schedule D is attached hereto as **Exhibit K**. TWC scheduled Union Bank as a secured creditor holding a contingent and unliquidated claim in an unknown amount. A copy of the relevant portion of the TWC Schedule D is attached hereto as **Exhibit L**.

**ANSWER**: Admitted.  By way of further response, Defendants state that the Union Bank Pre-Petition Agreement, TWC Domestic Schedule D, and TWC Schedule D are the best evidence of their respective contents and Defendants deny any allegations in Paragraph 18 to the extent they do not fully and accurately characterize the contents of the Union Bank Pre-Petition Agreement, TWC Domestic Schedule D, or TWC Schedule D.

19.     Union Bank has not filed a proof of claim.

**ANSWER**: Defendants admit that, as of August 27, 2018, Union Bank has not filed a proof of claim.  By way of further response, Defendants state that a claims bar date has not yet been established in the Debtors' Chapter 11 cases.

20.     Union Bank is also the administrative and collateral agent under the Debtor-in-Possession Loan and Security Agreement ("DIP Loan Agreement"). Pursuant to the DIP Loan Agreement, Holdings, TWC, and TWC Domestic may borrow up to $25 million from specified lenders ("DIP Loan"). The DIP Loan is secured by all present and after-acquired property of the Debtors, excluding avoidance actions under Chapter 5 of the Bankruptcy Code, commercial tort claims belonging to the Debtors or their estates, any claims arising out of the conduct of Harvey Weinstein, Robert Weinstein, or their non-debtor affiliates, and any claims against any party for contribution, reimbursement, or indemnification. The Court approved the DIP Loan Agreement and entered a final order on April 19, 2018 ("Final DIP Order"). The Final DIP Order is attached hereto as **Exhibit M**.

**ANSWER**: Admitted. By way of further response, Defendants state that the DIP Loan Agreement and Final DIP Order are the best evidence of their respective contents and

Defendants deny any allegations in Paragraph 20 to the extent they do not fully and accurately characterize the contents of the DIP Loan Agreement or Final DIP Order.

21.     Union Equities is the administrative agent under a Credit and Security Agreement dated October 9, 2015 (as amended), among Union Equities, TWC Domestic and lenders referred to therein ("Union Equities Pre-Petition Agreement"). TWC Domestic's obligations are secured by a junior lien on substantially all of TWC Domestic's assets. TWC Domestic scheduled Union Equities as a secured creditor holding an unliquidated claim for $15,644,238.54. A copy of the relevant portions of the TWC Domestic Schedule D is attached hereto as **Exhibit N**.

**ANSWER**: Admitted.  By way of further response, Defendants state that the Union Equities Pre-Petition Agreement is the best evidence of its contents and Defendants deny any allegations in Paragraph 21 to the extent they do not fully and accurately characterize the contents of the Union Equities Pre-Petition Agreement.

22.     Union Equities has not filed a proof of claim.

**ANSWER:** Defendants admit that, as of August 27, 2018, Union Equities has not filed a proof of claim.  By way of further response, Defendants state that a claims bar date has not yet been established in the Debtors' Chapter 11 cases.

## III.     THE PROCEEDINGS IN THIS CASE

### A. THE BANKRUPTCIES

23.     On March 19, 2018 ("Petition Date"), Holdings, TWC, and various of their affiliates, including TWC Borrower, filed petitions for relief under Chapter 11 of the Bankruptcy Code. [Docket No. 1].

**ANSWER:** Admitted.

### i. THE DIP LOAN

24.     On March 20, 2018, the Debtors filed a motion for orders approving, among other things, post-petition financing ("DIP Loan Motion"). [Docket No. 11]. The Debtors attached a copy of the DIP Loan Agreement to the DIP Loan Motion.

**ANSWER**: Defendants admit that the Debtors filed their DIP Loan Motion on March 20, 2018.  By way of further response, Defendants state that the DIP Loan Motion is the best

evidence of its contents and Defendants deny any allegations in Paragraph 24 to the extent they do not fully and accurately characterize the contents of the DIP Loan Motion.

25.    On March 20, 2018, the Court entered an order granting the DIP Loan Motion on an interim basis and scheduling a final hearing ("Interim DIP Loan Order"). [Docket No. 76].

**ANSWER**: Defendants admit that the Court entered the Interim DIP Loan Order on March 20, 2018.  By way of further response, Defendants state that the Interim DIP Loan Order is the best evidence of its contents and Defendants deny any allegations in Paragraph 25 to the extent they do not fully and accurately characterize the contents of the Interim DIP Loan Order.

26.    On April 17, 2018, the Court entered the Final DIP Order, which is attached hereto as **Exhibit M**. [Docket No. 267]. In the Final DIP Order, the Court ordered:

> **Investigation Rights**. The Committee shall have until April 27, 2018 . . . and all other non-debtor parties-in-interest . . . shall have seventy-five (75) days from the Petition Date (each, as applicable, the "Investigation Termination Date") to investigate the validity, perfection and enforceability of the Pre-Petition Liens and the Pre-Petition Obligations as well as the junior liens held by [Union Equities] . . . and to assert any other claims or causes of action against the Pre-Petition Secured parties or [Union Equities]. The Committee or other non-debtor party in-interest . . . shall have only until the applicable Investigation Termination Date to file such objection or claim . . . setting forth the basis of any such challenge, claim or cause of action; provided, however, that nothing contained in the DIP Loan [d]ocuments or this Final [DIP] Order shall be deemed to confer standing on any party-in-interest to commence a challenge.

Final DIP Order ¶ 16.

**ANSWER**: Defendants admit that the Court entered the Final DIP Order on April 17, 2018.  The remaining allegations in Paragraph 26 constitute legal conclusions to which no response is required.  By way of further response, Defendants state that the Final DIP Order is the best evidence of its contents and Defendants deny any allegations in Paragraph 26 to the extent they do not fully and accurately characterize the contents of the Final DIP Order.

27.    In paragraph 28 of the Final DIP Order, the Court ordered:

> **Sale Proceeds**. Unless . . . a [c]hallenge is asserted prior to the applicable Investigation Termination Date and sustained by the Court prior to the closing of any sale of the Pre-Petition Collateral, the DIP Secured Parties, the Pre-Petition Secured Parties, and the UBE Secured Parties shall, subject to satisfaction of Permitted Priority Liens from and to the extent of the proceeds of collateral securing such Permitted Priority Liens, be paid in cash upon the closing of a sale of Pre-Petition Collateral, *subject to disgorgement to the extent any [c]hallenge asserted in accordance with the terms of this Final [DIP] Order is ultimately sustained by the Court*.

Final DIP Order ¶ 28 (emphasis added).

    **ANSWER**: The allegations in Paragraph 27 constitute legal conclusions to which no response is required.  By way of further response, Defendants state that the Final DIP Order is the best evidence of its contents and Defendants deny any allegations in Paragraph 27 to the extent they do not fully and accurately characterize the contents of the Final DIP Order.

### ii. THE SALE MOTION

    28.    On March 20, 2018, the Debtors filed a motion to approve bidding procedures for the sale of substantially all of their assets, to schedule an auction, and to ultimately approve the sale of substantially all of their assets ("Sale Motion"). [Docket No. 8]. The Debtors sought approval of an asset purchase agreement with Lantern ("Lantern APA") attached to the Sale Motion, subject to higher and better offers. Under the Lantern APA, Lantern would purchase substantially all of the Debtors' assets for $310 million, subject to certain adjustments, payment of certain cure amounts, and assumption of certain liabilities.[7] Section 2.7 of the Lantern APA provides:

> **Aggregate Purchase Price**. . . . Each of Buyer and each Seller Party hereby acknowledges and agrees that the Cash Purchase Price shall be allocated such that (i) the value of the Purchased Assets that comprise the TWC Domestic Collateral is greater than the sum of (v) the TEC Domestic Debt (in the amount, as of the date hereof, of approximately $175 million . . ., plus (w) the principal amount outstanding under the DIP [Loan] Agreement . . . provided that such principal amount, for purposes of this Section . . . shall not be in excess of $26 million, plus (x) all Guild Residuals secured by the TWC Domestic Collateral and accrued prior to the Petition Date (in the amount, as of the date hereof, of approximately $8 million), plus (y) the amount of all interest accrued and unpaid after the

---

[7] Footnote 5 of the Complaint:  AI International reserves all rights to amend this Complaint for any reason to the extent permitted by law, including if the Debtors and Lantern execute any amendments to the Lantern APA.

**ANSWER:** Defendants state that whether the Plaintiff is entitled (or otherwise permitted by the Court) to amend the Complaint is a legal conclusion to which no response is required.

Petition Date through the Closing Date on the amount described in the preceding clauses (i)(v) through (i)(x), <u>minus</u> (z) any principal payments on the amounts described in the preceding clauses (i)(v) through (i)(x) after the Petition Date and through the Closing Date.

**ANSWER**: Defendants admit that the Debtors filed the Sale Motion on March 20, 2018. By way of further response, Defendants state that the Sale Motion and the Lantern APA are the best evidence of their respective contents and Defendants deny any allegations in Paragraph 28 to the extent they do not fully and accurately characterize the contents of the Sale Motion and the Lantern APA.

29.    On April 6, 2018, the Court entered an order approving the Debtors' proposed bidding procedures and scheduling an auction on May 4, 2018. [Docket No. 190].

**ANSWER**: Admitted.  By way of further response, Defendants state that the referenced order [Docket No. 190] is the best evidence of its contents and Defendants deny any allegations in Paragraph 29 to the extent they do not fully and accurately characterize the contents of the Court's order.

30.    On May 1, 2018, the Debtors filed a notice stating that the auction had been cancelled and designating Lantern as the successful bidder. [Docket No. 653].

**ANSWER**: Admitted.  By way of further response, Defendants state that the referenced notice [Docket No. 653] is the best evidence of its contents and Defendants deny any allegations in Paragraph 30 to the extent they do not fully and accurately characterize the contents of the notice.

31.    On May 9, 2018, the Court entered the Sale Order granting the Sale Motion and approving the Sale. [Docket No. 846]. A copy of the Sale Order is attached hereto as **<u>Exhibit P</u>**. In paragraph 26 of the Sale Order, the Court ordered that "[t]he proceeds of the Sale Transaction remaining after the payments expressly authorized by this Order shall be segregated and shall not be used absent further order of the Court." In paragraph 62, the Court ordered: "[t]he allocation of Cash Purchase Price set forth in section 2.7 of the [Lantern] APA shall not be binding on any party in interest other than as between the Debtors and the Purchasers and shall not bind the Court in determining the allocation of the remaining proceeds of the Sale Transaction."

**ANSWER**: Defendants admit that the Court entered the Sale Order on May 9, 2018.  By way of further response, Defendants state that the Sale Order is the best evidence of its contents and Defendants deny any allegations in Paragraph 31 to the extent they do not fully and accurately characterize the contents of the Sale Order.  Defendants further state that the language quoted from Paragraph 62 of the Sale Order omits, among other parts of that provision of the Sale Order, "except as expressly set forth in in section 2.7(i) of the APA…"

### B.    ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

32.    The principal source of distributions to AI International and other prepetition secured and unsecured creditors will be the proceeds from the Sale. Before any such distributions may be made, the Court must allocate the purchase price among the assets sold by the various Debtors, and determine the extent of any liens on such assets.

**ANSWER**: Denied.

33.    There has been no final determination of the validity, priority, or extent of Union Bank's or Union Equities' liens in connection with the DIP Loan Agreement or the Sale.

**ANSWER**: Denied.

34.    In order to determine whether any of the proceeds to be paid to Union Bank and Union Equities at the closing are subject to disgorgement, it is necessary for the Court to determine: i) whether and to what extent Union Bank and Union Bank Equities have valid and enforceable liens extending to assets that are included in the Sale; and ii) the value of any such assets.

**ANSWER**: Denied.

### CLAIMS FOR RELIEF

### COUNT ONE

### Determination of the Extent of the Lien Claimed by Union Bank
### [11 U.S.C. § 506; Bankruptcy Rule 7001(2)]
### (Against Union Bank)

35.    AI International restates the allegations in paragraphs 1 through 34 above.

**ANSWER**: Defendants repeat and reallege their responses to each and every allegation contained in Paragraphs 1 through 34 as if fully set forth herein.

36.     Pursuant to Bankruptcy Code § 506(a), Union Bank's claim is secured only to the extent "of the value of [its] interest in the estate's interest in such property."

**ANSWER**: The allegations in Paragraph 36 constitute legal conclusions to which no

response is required.

37.     AI International is entitled to a determination of the extent to which the assets of the estate of TWC Domestic which were included in the Sale, if any, were subject to the lien claimed by Union Bank.

**ANSWER**: Denied.

38.     AI International is entitled to a determination of whether the lien claimed by Union Bank in the assets of TWC Domestic which were included in the Sale, if any, was valid, perfected and enforceable with respect to such assets.

**ANSWER**: Denied.

39.     AI International is entitled to a valuation of the assets of TWC Domestic which were subject to a valid, perfected and enforceable lien in favor of Union Bank, if any, in order to determine the secured status of Union Bank's claim to the proceeds of the Sale.

**ANSWER**: Denied.

## COUNT TWO

### Determination of the Extent of the Lien Claimed by Union Equities
### [11 U.S.C § 506; Bankruptcy Rule 7001(2)]
### (Against Union Equities)

40.     AI International restates the allegations in paragraphs 1 through 39 above.

**ANSWER**: Defendants repeat and reallege their responses to each and every allegation

contained in Paragraphs 1 through 39 as if fully set forth herein.

41.     Pursuant to Bankruptcy Code § 506(a), Union Equities' claim is secured only to the extent "of the value of [its] interest in the estate's interest in such property."

**ANSWER**: The allegations in Paragraph 41 constitute legal conclusions to which no

response is required.

42.     AI International is entitled to a determination of the extent to which the assets of the estate of TWC Domestic which were included in the Sale, if any, were subject to the lien claimed by Union Equities.

01:23514689.4

**ANSWER**: Denied.

43.    AI International is entitled to a determination of whether the lien claimed by Union Equities in the assets of TWC Domestic which were included in the Sale, if any, was valid, perfected and enforceable with respect to such assets.

**ANSWER**: Denied.

44.    AI International is entitled to a valuation of the assets of TWC Domestic which were subject to a valid, perfected and enforceable lien in favor of Union Equities, if any, in order to determine the secured status of its claim on the proceeds of the Sale.

**ANSWER**: Denied.

**COUNT THREE**

**Objection to Claim**
**[11 U.S.C. § 502; Bankruptcy Rule 3007]**
**(Against Union Bank)**

45.    AI International restates the allegations in paragraphs 1 through 44 above.

**ANSWER**: Defendants repeat and reallege their responses to each and every allegation contained in Paragraphs 1 through 44 as if fully set forth herein.

46.    TWC Domestic scheduled Union Bank as a secured creditor holding an unliquidated claim.

**ANSWER**: Defendants admit that Union Bank is listed in TWC Domestic Schedule D. By way of further response, Defendants state that TWC Domestic Schedule D is the best evidence of its contents and Defendants deny any allegations in Paragraph 46 to the extent they do not fully and accurately characterize the contents of TWC Domestic Schedule D.

47.    TWC scheduled Union Bank as a secured creditor holding a contingent and unliquidated claim.

**ANSWER**: Defendants admit that Union Bank is listed in TWC Schedule D.  By way of further response, Defendants state that TWC Schedule D is the best evidence of its contents and

Defendants deny any allegations in Paragraph 47 to the extent they do not fully and accurately characterize the contents of TWC Schedule D.

48.     Union Bank has not filed any proof of claim in any of the Debtors' cases.

**ANSWER**: Defendants admit that, as of August 27, 2018, Union Bank has not filed a proof of claim.  By way of further response, Defendants state that a claims bar date has not yet been established in the Debtors' Chapter 11 cases.

49.     AI International is thus entitled to a judgment that Union Bank's claim is disallowed and that Union Bank may not be treated as a creditor with respect to any claim for the purposes of voting and distribution; or, in the alternative, that Union Bank's claim be disallowed as a secured claim to the extent it exceeds the value of Union Bank's lien on the assets of the estate of TWC Domestic.

**ANSWER**: Denied.

## COUNT FOUR

### Objection to Claim
### [11 U.S.C. § 502; Bankruptcy Rule 3007]
### (Against Union Equities)

50.     AI International the allegations in paragraphs 1 through 49 above.

**ANSWER**: Defendants repeat and reallege their responses to each and every allegation contained in Paragraphs 1 through 49 as if fully set forth herein.

51.     TWC Domestic scheduled Union Equities as a secured creditor holding an unliquidated claim.

**ANSWER**: Defendants admit that Union Equities is listed in TWC Domestic Schedule D.  By way of further response, Defendants state that TWC Domestic Schedule D is the best evidence of its contents and Defendants deny any allegations in Paragraph 51 to the extent they do not fully and accurately characterize the contents of TWC Domestic Schedule D.

52.     Union Equities has not filed any proof of claim in any of the Debtors' cases.

01:23514689.4

**ANSWER**: Defendants admit that, as of August 27, 2018, Union Equities has not filed a proof of claim.  By way of further response, Defendants state that a claims bar date has not yet been established in the Debtors' Chapter 11 cases.

53.     AI International is thus entitled to a judgment that Union Equities' claim is disallowed and that Union Equities may not be treated as a creditor with respect to any claim for the purposes of voting and distribution; or, in the alternative, that Union Equities' claim be disallowed as a secured claim to the extent it exceeds the value of Union Equities' lien on the assets of the estate of TWC Domestic.

**ANSWER**: Denied.

## COUNT FIVE

**Declaration of the Amount of Sale Proceeds Required to be Disgorged by Union Bank**
**[28 U.S.C. § 2201; Bankruptcy Rule 7001(9)]**
**(Against Union Bank)**

54.     AI International restates the allegations in paragraphs 1 through 53 above.

**ANSWER**: Defendants repeat and reallege their responses to each and every allegation contained in Paragraphs 1 through 53 as if fully set forth herein.

55.     Union Bank's claim is a secured claim only to the extent of the value of its interest in property of the estate of TWC Domestic.

**ANSWER**: The allegations in Paragraph 55 constitute legal conclusions to which no response is required.

56.     Union Bank is not entitled to retain any money, property, or proceeds from the Sale that exceed the value of its interest in the property of TWC Domestic subject to a valid, perfected, and enforceable lien in favor of Union Bank, if any, on assets which were included in the Sale.

**ANSWER**: Denied.

57.     Union Bank is required to disgorge any money, property, or proceeds it may receive upon closing of the Sale to the extent it exceeds the value of the property of the estate of TWC Domestic subject to a valid, perfected, and enforceable lien in favor of Union Bank, if any, which were included in the Sale.

**ANSWER**: Denied.

01:23514689.4

58.     AI International is entitled to a judgment declaring that Union Bank must disgorge the excess of the money, property, or proceeds it receives at the closing of the Sale over the value of the assets of the estate of TWC Domestic included in the Sale which are subject to a valid, perfected, and enforceable lien in favor of Union Bank, in an amount to be proved at trial.

**ANSWER**: Denied.

## COUNT SIX

### Declaration of the Amount of Sale Proceeds Required to be Disgorged by Union Equities
### [28 U.S.C. § 2201; Bankruptcy Rule 7001(9)]
### (Against Union Equities)

59.     AI International restates the allegations in paragraphs 1 through 58 above.

**ANSWER**: Defendants repeat and reallege their responses to each and every allegation contained in Paragraphs 1 through 58 as if fully set forth herein.

60.     Union Equities' claim is a secured claim only to the extent of the value of its interest in property of the estate of TWC Domestic.

**ANSWER**: The allegations in Paragraph 60 constitute legal conclusions to which no response is required.

61.     Union Equities is not entitled to retain any money, property, or proceeds from the Sale that exceed the value of its interest in the property of TWC Domestic subject to a valid, perfected, and enforceable lien in favor of Union Equities, if any, which were included in the Sale.

**ANSWER**: Denied.

62.     Union Equities is required to disgorge any money, property, or proceeds it may receive upon closing of the Sale to the extent it exceeds the value of the property of the estate of TWC Domestic subject to a valid, perfected, and enforceable lien in favor of Union Equities, if any, which were included in the Sale.

**ANSWER**: Denied.

63.     AI International is entitled to a judgment declaring that Union Equities must disgorge the excess of the money, property, or proceeds it receives at the closing of the Sale over the value of the assets of the estate of TWC Domestic included in the Sale which are subject to a valid, perfected, and enforceable lien in favor of Union Equities, in an amount to be proved at trial.

01:23514689.4

**ANSWER**: Denied.

## PRAYER FOR RELIEF

Defendants deny that the Plaintiff is entitled to any of the relief set forth in the "Prayer for Relief" section of the Complaint and deny all allegations contained therein.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof or persuasion they would not otherwise bear, Defendants assert the following affirmative defenses. Nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to this action.

1.      The Complaint fails to state a claim that entitles the Plaintiff to any relief against Defendants.

2.      The Plaintiff lacks standing to pursue some or all of its claims asserted in the Complaint.

3.      The Plaintiff is not entitled to the remedies sought in the Prayer for Relief section of the Complaint.

4.      Some or all of the claims in the Complaint are barred by the doctrines of res judicata and/or collateral estoppel.

5.      Some or all of the claims in the Complaint are barred by the doctrines of waiver and/or acquiescence.

6.      Some or all of the claims in the Complaint are barred pursuant to the Final DIP Order.

7.      Some or all of the claims in the Complaint are barred pursuant to the Sale Order.

8.      Some of all of the claims in the Complaint are (or will be) rendered moot.

Defendants expressly reserve the right to amend and/or supplement their affirmative and other defenses.

01:23514689.4

WHEREFORE, Defendants respectfully pray for judgment in their favor on all Counts set forth in the Complaint and for such other and further legal and equitable relief as the Court deems just and proper, including, without limitation, the costs and fees incurred by Defendants.

Dated: August 27, 2018
   Wilmington, Delaware

/s/ Sean M. Beach
Robert S. Brady, Esq. (No. 2847)
Sean M. Beach (No. 4070)
Elizabeth S. Justison (No. 5911)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253
Email: rbrady@ycst.com
   sbeach@ycst.com

*Counsel to Defendants*

SIDLEY AUSTIN LLP
Jennifer C. Hagle, Esq. (*pro hac vice*)
Ariella Thal Simonds, Esq. (*pro hac vice*)
555 West Fifth Street
Los Angeles, California 90013
Telephone:  (213) 896-6000
Facsimile:   (213) 896-6600
Email: jhagle@sidley.com
   asimonds@sidley.com

*Counsel to Defendant MUFG Union Bank, N.A.*

KATTEN MUCHIN ROSENMAN LLP
William B. Freeman (*pro hac vice*)
Jerry L. Hall (*pro hac vice*)
515 South Flower Street
Suite 1000
Los Angeles, California 90071-2212
Telephone:  (212) 940-8800
Facsimile:  (212) 940.8776
Email: bill.freeman@kattenlaw.com
   jerry.hall@kattenlaw.com

*Counsel to Defendant UnionBanCal Equities, Inc.*

01:23514689.4