## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,[1]<br><br>Debtors.<br><br>-------------------------------------------------------<br>In re:<br><br>AI INTERNATIONAL HOLDINGS (BVI) LTD.,<br><br>                  Plaintiff,<br><br>    -against-<br><br>MUFG UNION BANK, N.A.; as administrative and collateral agent and UNIONBANCAL EQUITIES, INC.<br><br>                  Defendants. | Chapter 11<br><br>Case No. 18-10601 (MFW)<br><br>Jointly Administered<br><br><br>Adv. Proc. No. 18-50486 (MFW)<br><br>**REPLY BRIEF IN SUPPORT OF THE DEFENDANTS' MOTION FOR <u>SUMMARY JUDGMENT</u>** |

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of debtors in these cases ("<u>Debtors</u>"), which are being jointly administered for procedural purposes only, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://dm.epiq11.com/twc.

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ..................................................................................1

REPLY ....................................................................................................................4

     I.       SUMMARY JUDGMENT IS WARRANTED ......................................4

          A.     The Sale Order and APA Established the Value of the Defendants' Collateral...................................................................................4

          B.     Regardless of Whether the Plaintiff Properly Asserted a Challenge Under the Final DIP Order (It Did Not), the Plaintiff Cannot "Challenge" the Value Approved in the Sale Order ...................................6

     II.     BANKRUPTCY CODE SECTIONS 502 AND 506 DO NOT CREATE A JURISDICTIONAL LOOPHOLE FOR A REMOTELY CONNECTED EQUITY HOLDER OF CERTAIN AFFILIATES TO CHALLENGE THE LIENS OR CLAIMS OF SECURED LENDERS OF A DIFFERENT AFFILIATE .........................................................................................8

01:23764036.1

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Barney's, Inc.*,
   197 B.R. 431 (Bankr. S.D.N.Y. 1996) ........................................................................8

*In re Barrios*,
   257 B.R. 626 (Bankr. S.D. Fla. 2000) ...................................................................8, 12

*Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.)*,
   799 F.2d 91 (3d Cir. 1986)...........................................................................................12

*Gaglia v. First Federal Savings and Loan Association*,
   889 F.2d 1304 (3d Cir. 1989).......................................................................................11

*In re Grant Broad. of Philadelphia, Inc.*,
   71 B.R. 655 (Bankr. E.D. Pa. 1987) ..............................................................................8

*In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*,
   559 B.R. 627 (Bankr. D. Del. 2016) ............................................................................10

*In re Morrison*,
   69 B.R. 586 (Bankr. E.D. Pa. 1987) ............................................................................12

*The Renco Grp. Inc. v. Wilmington Tr., Nat'l Assoc. et al. (In re Magnesium
   Corp. of Am.)*,
   583 B.R. 637, 653 (Bankr. S.D.N.Y. 2018)........................................................8, 9, 10, 12

*United Steelworkers of Am. v. Lampl (In re Mesta Mach. Co.)*,
   67 B.R. 151 (Bankr. W.D. Pa. 1986) .............................................................................8

STATUTES

11 U.S.C. § 502........................................................................................................................8

11 U.S.C. § 502(a) ...................................................................................................................8

11 U.S.C. § 506...................................................................................................................8, 11

11 U.S.C. § 506(a) ...................................................................................................................8

**OTHER AUTHORITIES**

4 COLLIER ON BANKRUPTCY ¶ 502.02[2][d] (Alan N. Resnick & Henry J. Sommer
eds., 16th ed. 2018) ................................................................................................................. 9

7 COLLIER ON BANKRUPTCY ¶ 1109.03 (Alan N. Resnick & Henry J. Sommer
eds., 16th ed. 2018) ............................................................................................................... 10

Defendants MUFG Union Bank, N.A. ("MUFG" or the "Pre-Petition Agent") and

UnionBanCal Equities, Inc. ("UBE" and, together with MUFG, the "Defendants"), by their

undersigned attorneys, hereby submit this reply brief (this "Reply Brief") in support of the

*Defendants' Motion for Summary Judgment* [Adv. Docket No. 17] (the "Summary Judgment

Motion")[2] and in response to *AI International Holdings (BVI) Ltd.'s Opposition to Defendants'*

*Motion for Summary Judgment* [Adv. Docket No. 27] (the "Opposition"), filed on October 5,

2018, by AI International Holdings (BVI) Ltd. (the "Plaintiff").

## PRELIMINARY STATEMENT

The Plaintiff argues that "fundamental rules" of contract interpretation dictate the result

of these proceedings and that no clause in a court order should be rendered superfluous—

apparently except for the Sale Order, which the Plaintiff disregards in its entirety.[3]  The Plaintiff

misquotes several orders in its Opposition, most importantly of which is the following selectively

omitted language from paragraph 62 of the Sale Order (*see* bolded language below):[4]

> **Notwithstanding paragraph CC of this Order and except as**
> **expressly set forth in section 2.7(i) of the APA, the Final DIP**
> **Order or this Order**, the allocation of the Cash Purchase Price as
> set forth in section 2.7 of the [Lantern] APA shall not be binding
> on any party in interest other than as between the Debtors and the
> Purchasers and shall not bind the Court in determining the
> allocation of the remaining proceeds of the Sale Transaction.

(Sale Order ¶ 62 (emphasis added); *contra* Opposition ¶ 19).

---

[2]   Capitalized terms used, but not otherwise defined herein, shall have the meanings given to such terms in the
*Brief in Support of the Defendants' Motion for Summary Judgment* [Adv. Docket No. 18] (the "Opening
Brief").

[3]   Perhaps recognizing that the plain language of the Sale Order is determinative in this dispute, the Plaintiff
chooses to focus its Opposition on the Final DIP Order.  However, the Sale Order was entered *after* the Final
DIP Order and paragraph 62 relates specifically to the allocation of value to the Defendants, making the
Plaintiff's argument that the Final DIP Order somehow preserved its right to challenge the value of the
Defendants' collateral nonsensical.

[4]   As discussed below, the Plaintiff also misquotes paragraph 16 of the Final DIP Order.  Copies of the Final DIP
Order and Sale Order are attached as Ex. 2 and 5, respectively, to the Neiburg Declaration [Adv. Docket No.
19] submitted in support of the Summary Judgment Motion.

The words Plaintiff deliberately omits from paragraph 62, a provision which Plaintiff negotiated,[5] are precisely the reason why summary judgment should be granted for the Defendants.  Through paragraph 62 of the Sale Order, the Court ordered that the allocation in the APA was not binding "*except as expressly set forth in section 2.7(i) of the APA*," which specifically governs the allocation to the Defendants and sets forth the value of their collateral, and that the allocation of the Cash Purchase Price in section 2.7 of the APA shall "not bind the Court in determining the allocation of the *remaining proceeds* of the Sale Transaction."  The reference to the "*remaining proceeds*" is meaningless absent the cross reference to the carve-out in section 2.7(i) of the APA.  Accordingly, the Sale Order provides that the allocation set forth in section 2.7(i) of the APA *is* binding on all parties in interest, and therefore, the Plaintiff's claims to the contrary are an impermissible collateral attack on this Court's order.

Despite having every opportunity and apparent incentive to do so, the Plaintiff failed to timely appeal the Sale Order and therefore the value of the Defendants' collateral set forth in section 2.7(i) of the APA, which is in excess of their debt, is now binding.[6]  For this reason alone, summary judgment in the Defendants' favor is warranted.

While the Plaintiff styles its litigation ploy as a challenge to the Defendants' liens and claims, it is telling that the Plaintiff fails to even allege that the liens are invalid or identify any injury to the Plaintiff resulting from any purported invalidity or from the Defendants' claims.  In contrast, the Committee, upon being granted standing as a fiduciary of the Debtors' estates, conducted an exhaustive factual and legal investigation of the Defendants' liens on the Pre-Petition Collateral and the UBE Collateral, validated such liens, and confirmed that the value of

---

[5]    (*See* Opening Brief ¶¶ 28-30).

[6]    The Plaintiff had yet another opportunity, and again failed, to dispute the allocation in connection with the APA Amendment Motion [Docket No. 1115], which sought to amend certain terms of the APA but did not modify the allocation set forth in section 2.7(i).

the Pre-Petition Collateral and the UBE Collateral exceeded the Defendants' secured debt.  The

Debtors likewise confirmed that the value of the Defendants' collateral exceeded their

prepetition secured debt, which confirmation was critical to MUFG's decision to provide DIP

financing, which funding preserved the value of all estate assets and provided an opportunity to

maximize the value of those assets.  Furthermore, the Purchaser agreed that the value of the

Defendants' collateral exceeded their prepetition secured debt when it agreed to section 2.7(i) of

the APA.  And, pursuant to the Sale Order, the Court approved every provision of the APA.[7]

At its core, this dispute is being driven by a remotely connected equity holder of affiliates

of TWC Domestic, who has no cross-collateralization with the Defendants' collateral and stands

to recover nothing even if its purported "challenge" is successful.  Query why a party who

openly admits that "it is unrealistic to expect, even under the best circumstances, that [it] will

recover its claim from proceeds of the Lantern Sale" would threaten to spend millions of dollars

on professional fees for a valuation fight.[8]  The answer is simple:  the Plaintiff's sole purpose in

commencing this action is to obtain settlement leverage against the Defendants, which is its only

possibility of recovering in these cases.  However, the Plaintiff's apparent willingness to waste

both estate[9] and its own resources on meritless litigation does not absolve it from satisfying the

threshold requirement that it must establish standing to commence these proceedings, by

---

[7]  (Sale Order ¶ 4).

[8]  *See Reply Brief in Support of Motion of AI International Holdings (BVI) Ltd. for Relief from Automatic Stay and Related Relief* [Docket No. 1510] ¶ 4 ("[E]asily" rejecting opposing counsel's argument that "it is premature and unnecessary to proceed against Weinstein's alleged guaranty of the Loan while AI International's litigation with Union bank over allocation of the sale proceeds is in its infancy" because "it is unrealistic to expect, even under the best circumstances, that AI International will recover its claim from proceeds of the Lantern Sale. Given the purchase price reduction, escalating administrative claims against these estates, and the unknown liability related to the sexual harassment litigation, AI International will struggle to receive sufficient value from the sale proceeds to pay its claims. Weinstein's suggestion that proceeds from the Lantern Sale are likely to have a 'significant impact' on the eventual amount of Weinstein's liability is specious, at best.").

[9]  Pursuant to various indemnification provisions in the prepetition loan documents, paragraph 8 of the Final DIP Order, and section 13.04 of the DIP Credit Agreement, as confirmed by paragraph 9 of the Sale Order, the Debtors and their estates will bear the cost of the professional fees incurred in connection with this action.

describing an injury in fact that is concrete, distinct and palpable, and that is likely to be redressed by a favorable decision.

For the reasons set forth below and in the Opening Brief, there is no genuine dispute of material fact and the Defendants are entitled to summary judgment as a matter of law.

## REPLY

## I.   SUMMARY JUDGMENT IS WARRANTED

### A.   The Sale Order and APA Established the Value of the Defendants' Collateral

1.   The Plaintiff ***does not dispute*** that the Sale Order is a final, non-appealable order. The Plaintiff likewise ***cannot dispute*** that paragraph 62 of the Sale Order directly and explicitly carved out section 2.7(i) of the APA, which expressly established "the value" of the Defendants' collateral and was approved by the Court.  (Sale Order ¶ 4).  The Plaintiff therefore is barred by the doctrine of *res judicata* from seeking a valuation of the Defendants' collateral.

2.   Section 2.7(i) of the APA provides as follows:

> Each of Buyer and each Seller Party hereby acknowledges and agrees that the Cash Purchase Price shall be allocated such that (i) ***the value*** of the Purchased Assets that comprise the TWC Domestic Collateral is greater than the sum of (v) the TWC Domestic Debt[10] (in the amount, as of the date hereof, of approximately $175 million (inclusive of the Pre-Petition Agent's financial advisor's deferred fee)), plus (w) the principal amount outstanding under the DIP Financing Agreement, in the form filed on the Petition Date for approval by the Bankruptcy Court, provided that such principal amount, for purposes of this Section 2.7, shall not be in excess of $26 million, plus (x) all Guild Residuals secured by the TWC Domestic Collateral and accrued prior to the Petition Date (in the amount, as of the date hereof, of approximately $8 million), plus (y) the amount of all interest accrued and unpaid after the Petition Date through the Closing Date on the amounts described in the preceding clauses

---

[10]   The term "TWC Domestic Debt" is defined in the APA as "all indebtedness outstanding" under the Prepetition Credit Agreement and the UBE Credit Agreement.  (*See* Ex A-14 to APA).  A copy of the APA is attached as Ex.1 to the Sale Order.

> (i)(v) through (i)(x), <u>minus</u> (z) any principal payments on the amounts described in the preceding clauses (i)(v) through (i)(x) after the Petition Date and through the Closing Date[.]

(APA § 2.7(i) (emphasis added)).  The Plaintiff's effort, in both the Complaint and its Opposition, to selectively omit and mischaracterize the operative language from paragraph 62 of the Sale Order does not render it non-existent.[11]  Rather, as the Plaintiff aptly observes, "[t]he terms of bankruptcy court orders are given meaning under principles of contract interpretation," Opposition ¶ 48, and a court should interpret a contract in a way that will "avoid surplusage." (*Id.* ¶ 57).  The Plaintiff fails to provide any explanation as to how the clear language of paragraph 62 can be reconciled with its current efforts to challenge the value allocation set forth in section 2.7(i) of the APA.

3.    The Plaintiff's true intention in these proceedings is clear—an end run around the finality of the Sale Order to contest the valuation set forth in the APA.  (*See, e.g.,* Opposition ¶ 28 ("Counts I and II of the Complaint seek . . . a determination under section 506 of the extent to which the liens claimed by MUFG and UBE in the assets of TWC Domestic, which were included in the Sale, if any, were valid, perfected and enforceable with respect to such assets.  As part of this relief, AI International seeks a valuation of the film library assets of TWC Domestic[.]")).[12]  That ship has sailed, however—the Sale Order and APA expressly established that the value of the Defendants' collateral exceeds the debt owed to them and the Plaintiff did

---

[11]    In the Plaintiff's first reference to paragraph 62 of the Sale Order, it entirely omits the determinative language carving out section 2.7(i) of the APA.  (Opposition ¶ 19; *see also* Complaint ¶ 31 (omitting the same language).  While the Plaintiff later includes this language in its Opposition, it completely mischaracterizes paragraph 62 as containing "limiting language . . . restricting the allocation provisions of the APA to only bind the parties to the APA."  (Opposition ¶ 46).  In contrast, the plain language of paragraph 62 expressly provides that the allocation is only binding on the Debtors and the Purchasers "***except as expressly set forth in section 2.7(i) of the APA***."  (Sale Order ¶ 62) (emphasis added).

[12]    (*See also* Complaint, Counts I-II and V-VI).

not appeal the Sale Order.  The Defendants are thus entitled to summary judgment as a matter of law on Counts I-II and V-VI asserted in the Complaint.

> **B.**  **Regardless of Whether the Plaintiff Properly Asserted a Challenge Under the Final DIP Order (It Did Not), the Plaintiff Cannot "Challenge" the Value Approved in the Sale Order**

4.    As discussed in the Opening Brief,[13] the Plaintiff was required to seek and be granted standing to commence a Challenge within the meaning of the Final DIP Order.  The Plaintiff undeniably failed to commence a Challenge meeting the express and straightforward requirements of paragraph 16 of the Final DIP Order.  For this reason alone, the Plaintiff is barred by the doctrine of *res judicata* from challenging the validity and extent of the Defendants' liens and the payment to the Defendants.  Recognizing as much, the Plaintiff deliberately omitted the following bolded language pertaining to standing from its quotation of paragraph 16 of the Final DIP Order:

> The Committee or other non-debtor party in-interest **(subject, except in the case of the Committee, to being granted standing by this Court to file and prosecute an objection or claim related thereto (each, a 'Challenge')),** shall have only until the applicable Investigation Termination date to file such objection or claim **(or otherwise initiate an appropriate action on behalf of the Debtors' estates)** setting forth the basis of any such challenge, claim or cause of action; provided, however, that nothing contained in the DIP Loan [d]ocuments or this Final [DIP] Order shall be deemed to confer standing on any party-in-interest to commence a challenge; **provided, further, however, that the Committee shall be deemed, pursuant to this order, to have standing to bring a Challenge**.

(Final DIP Order ¶ 16 (emphasis added); *contra* Opposition ¶ 13).  The Plaintiff's attempt to obfuscate its failures by misquoting this Court's orders should not be countenanced.

---

[13]    (*See* Opening Brief ¶¶ 16-18, 50-63).

5.      In any event, because the Plaintiff failed to seek and obtain derivative standing, the Plaintiff cannot assert a Challenge within the meaning of the Final DIP Order.  Assuming *arguendo* the Court determines that the Plaintiff may nevertheless assert claims against the Defendants, any claims concerning the value of the Defendants' collateral are precluded by operation of the Sale Order, which order was entered *after* the Final DIP Order and specifically provided for the allocation of value to the Defendants.  Putting aside that Plaintiff has no direct standing here,[14] claims that are not expressly barred by the Sale Order conceivably might include those relating to the validity and perfection of the Defendants' liens.

6.      The Plaintiff, however, fails to allege a *single* fact pertaining to the validity or perfection of the Defendant's liens.  Indeed, the Plaintiff does not even allege that the Defendants' liens *are* invalid or unperfected.[15]  It also does not allege that the amount of the TWC Domestic Debt (as defined in the APA) is stated inaccurately or is otherwise not owed to the Defendants.  The Plaintiff performed no investigation before filing its Complaint.  In fact, it did not request a single document relating to the validity, perfection, or enforceability of the Defendants' liens, despite being fully aware that relevant information would have been readily available given that the Committee, acting in its role as a fiduciary of the Debtors' estates, had already fully investigated the Defendants' liens and ultimately stipulated to their validity.[16]  (*See* Neiburg Decl. Ex. 2, UCC Stip. ¶ 1); Neiburg Decl. Ex. 3, Transcript of May 8, 2018 Hearing at

---

[14]    Discussed *infra,* and in detail in the Opening Brief ¶¶ 65-71.

[15]    (*See* Complaint ¶ 33, asserting (incorrectly) that "[t]here has been no final determination of the validity, priority of extent of [the Defendants'] liens.")  The Complaint, however, contains no allegations that the Defendants' liens are invalid or unperfected.

[16]    The Defendants' secured claims were allowed under the Final DIP Order and were listed in the Debtors' schedules, thereby confirming that such claims are ***not*** contingent, unliquidated or disputed, which obviated any need for the Defendants to file proofs of claim.  Moreover, there is no bar date order in the Debtors' chapter 11 cases.  In addition, the Plaintiff was fully aware that there was a compiled packet of documentation pertaining to the validity and enforceability of the Defendants' liens that had already been provided to, and reviewed by, the Committee.

48:3-4 ("The committee has done its work with respect to the challenge.").[17]  Although the

Plaintiff dismisses the Final DIP Order's investigation requirement, *see* Opposition ¶ 37, the

purpose of such requirement is clear:  to prevent parties like the Plaintiff from filing an entirely

baseless "challenge" at the 11th hour for litigation leverage when the facts at issue have already

been fully vetted by real parties in interest, like the Committee, who owe fiduciary duties to the

estates.

       7.     The Sale Order is final and non-appealable and the value assigned to the

Defendants' collateral is binding.  Thus, to the extent the Plaintiff is determined to have direct

standing to assert claims against the Defendants, if any exist, the valuation of the Defendants'

collateral set forth in the Sale Order and the APA must be expressly excluded from such claims.

## II.    BANKRUPTCY CODE SECTIONS 502 AND 506 DO NOT CREATE A JURISDICTIONAL LOOPHOLE FOR A REMOTELY CONNECTED EQUITY HOLDER OF CERTAIN AFFILIATES TO CHALLENGE THE LIENS OR CLAIMS OF SECURED LENDERS OF A DIFFERENT AFFILIATE

       8.     Contrary to the Plaintiff's assertions, neither section 502 nor section 506 of the

Bankruptcy Code grants a party standing to object to the claims or liens of another party.  *See In*

*re Barrios*, 257 B.R. 626, 627 (Bankr. S.D. Fla. 2000) ("Section 506(a) provides no guidance in

regard to standing."); *The Renco Grp. Inc. v. Wilmington Tr., Nat'l Assoc. et al.* (*In re*

*Magnesium Corp. of Am.*), 583 B.R. 637, 653 (Bankr. S.D.N.Y. 2018) ("[U]nder section 502(a),

a creditor *may* have standing to object to claims . . . ***However, the right of one creditor to object***

---

[17]    The Committee and its members owe a fiduciary duty to all creditors represented by the Committee.  *In re Barney's, Inc.*, 197 B.R. 431, 442 (Bankr. S.D.N.Y. 1996) (collecting cases).  "Like counsel to Creditors' Committees, committee members are 'fiduciaries' who 'have obligations of fidelity, undivided loyalty and impartial service' to the interests of *all* creditors in their actions in their capacities as Committee members."  *In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 655, 664 (Bankr. E.D. Pa. 1987) (internal citations omitted) (emphasis in original); *see also United Steelworkers of Am. v. Lampl (In re Mesta Mach. Co.)*, 67 B.R. 151, 156–57 (Bankr. W.D. Pa. 1986) ("The Supreme Court has unequivocally found that creditors' committees and counsel are fiduciaries.  In *Woods v. City National Bank . . .*, the Supreme Court held that a creditors' committee in a corporate reorganization were fiduciaries. Committee members and counsel to the committee must have undivided loyalty to those whom they represent without any conflict of interest.") (internal citations omitted).

*to another creditor's claim is not absolute and is subject to judicial limitation.*") (citations

omitted) (second emphasis added).[18]

     9.     Standing to object to claims is a threshold requirement that an equity holder, like

the Plaintiff, lacks "unless there is a reasonable possibility of a surplus after all claims against the

debtor's estate are paid in full." *The Renco Grp.*, 583 B.R. at 650. As set forth in the Opening

Brief, the Plaintiff's possibility of recovery is far too attenuated for it to establish standing due to

the following "chain of contingencies," *each* of which would have to occur for the Plaintiff to

have any chance of recovery:

     a.    The Plaintiff would have to prevail on summary judgment, despite (i) its clear failure to assert a Challenge in compliance with the Final DIP Order and (ii) the plain language of the Sale Order providing that the allocation to the Defendants was binding on all parties in interest (*See* Sale Order ¶ 62; APA § 2.7(i));

     b.    The Plaintiff would be required to establish, in a lengthy and expensive valuation trial, that (i) the value of the Defendants' collateral on the Closing Date was less than the sale proceeds received by the Defendants and, further, that (ii) there is some basis, which the Plaintiff has yet to articulate, for re-allocating a sufficient portion of the proceeds away from TWC Domestic and toward the Debtor entities for which the Plaintiff holds a lien on the equity;

     c.    The Plaintiff would be required to establish, in another lengthy and expensive trial, that the Pre-Petition Agent's collateral has not diminished in value since the Petition Date, given that any diminution in the value of the Pre-Petition Agent's collateral would be secured by Adequate Protection Liens and Superpriority Claims that are (i) paid before the Plaintiff and (ii) payable from nearly any asset pool (*i.e.*, not limited to TWC Domestic) (*See* Final DIP Order ¶¶ M, 10, 12);

---

[18]   *See also* 4 COLLIER ON BANKRUPTCY ¶ 502.02[2][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018) ("COLLIER") ("[I]t is the trustee who acts as the primary spokesman for all the creditors in the discharge of the trustee's duty. . . . [T]he right of individual creditors to object to the claim of another creditor is restricted. While a creditor may object before a trustee is qualified or when there is no trustee, once the trustee has been duly appointed it is the duty of the trustee to examine and take action concerning the disallowance of claims."); *Id* at ¶ 502.02[2][e] ("For the same reason that the chapter 7 debtor and creditors usually may not object to the allowability of another creditor's claim when there is an appointed trustee, the debtor's stockholders are not parties in interest within the meaning of section 502(a) and, therefore, lack the standing to object to the allowability of the claims of creditors of the debtor.")

d. The Plaintiff would be required to establish that all of the above proceedings have not exhausted the funds allocated for distribution to WGFC and Weinstein Television LLC, given that (i) the Debtors and their estates bear the full cost of MUFG's professional fees incurred in connection with these litigations and (ii) any amounts paid to lender professionals are not subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person (*See* Final DIP Order ¶ 8; DIP Credit Agreement § 13.04; Sale Order ¶ 9);

e. Given that the Plaintiff is secured in the equity of WGFC and Weinstein Television LLC, the Plaintiff would further be required to establish that any proceeds available for distribution to those entities after all of the above are more than enough to pay, in full, those higher priority secured claims, as well as those Debtors' proportionate shares of all DIP obligations, administrative claims, and unsecured claims (including intercompany claims, tort claims, and other claims);

f. The Plaintiff would further be required to establish that its interest in WGFC's rights to certain "Foreign Film Rights Collateral" (i) is not voidable as a fraudulent conveyance and (ii) is valuable enough to provide a recovery for the Plaintiff; and

g. Finally, if the Plaintiff can establish that any proceeds allocable to WGFC and Weinstein Television LLC are left ***after all of the above***, only then may the Plaintiff receive a recovery.

It is simply "not reasonably plausible" that Plaintiff will be impacted "in a pecuniary way by disallowance" of the Defendants' claims because the Plaintiff falls "at the bottom of priority distribution scheme." *The Renco Grp.*, 583 B.R. at 650. The fact that the Plaintiff may be "ready, willing, and able to proceed" is irrelevant because it has wholly failed to demonstrate any alleged injury capable of redress.[19]

10. Rather than even attempting to belie the "chain of contingencies" set forth in the Defendants' Opening Brief, the Plaintiff instead repeats four different contingencies, notes

---

[19] *See In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*, 559 B.R. 627, 641 (Bankr. D. Del. 2016) ("[A]lthough the concept of a 'party in interest' is necessarily broad, it was not intended to include literally every conceivable entity that may be involved in or affected by that [ ] proceedings . . . even if one holds an indirect interest in the outcome of the proceeding . . . principles of standing may restrict participation if the issues addressed in the proceeding are not more than marginally relevant to his or her interest generally.") (citing 7 COLLIER ¶ 1109.03).

without any substantiation that it is "capable" of completing them, and then lumps the remaining contingencies together while vaguely asserting that it can "compete successfully with other claimants" for value. (Opposition ¶ 62). The Plaintiff is silent regarding *how* it will successfully compete for this value, given both the significant known and expected number and amounts of claims above it, it is secured in equity, and its rights in certain "Foreign Film Rights Collateral" are plausibly voidable as a fraudulent conveyance.

11.     Moreover, the fact that the Plaintiff fails to cite a single case that is remotely factually relevant speaks volumes. For instance, the Plaintiff cites to *Gaglia v. First Federal Savings and Loan Association* for the proposition that an individual chapter 7 debtor could challenge a lien under sections 506(a) and (d). (Opposition ¶ 29). The *Gaglia* case is inapposite.

12.     In *Gaglia*, the individual chapter 7 debtors were a family who listed their residence as their sole asset of any value. *Gaglia*, 889 F.2d 1304, 1305 (3d Cir. 1989). The residence was secured by two mortgages and the Gaglias sought an order voiding the second mortgagor's security interest in the amount exceeding the property's claimed value less the balance of the first mortgage. *Id.* The Third Circuit concluded that the Gaglias could utilize section 506 to void the lien because, among other things, 1) such relief would place the second mortgagor in the same position as if there had been a liquidation of the property and 2) absent such relief the Gaglias would have "little incentive to remain on the property, since they could only get a good title after paying far more than what the property is worth." *Id.* at 1306–08. The Gaglias' "fresh start" could be impeded, because the lienor could wait until they were discharged and then foreclose and obtain a deficiency judgment. *Id.* None of the concerns raised by the Third Circuit in allowing an individual chapter 7 debtor to utilize section 506 are applicable to the Plaintiff, who is a remotely connected equity holder of affiliates of TWC Domestic who

11

would not be impacted in any way by the use of section 506 absent the satisfaction of the contingencies set forth above.

13.     The *Barrios* decision is likewise distinguishable.  In *Barrios*, the United States Bankruptcy Court for the Southern District of Florida held that a general unsecured creditor had standing to force the modification of the lien of a mortgagor because the general unsecured creditor had "a sufficient stake" in the outcome, and its objection "clearly had merit" because the mortgagor's "wholly unsecured homestead mortgage lien [could] be stripped off pursuant to section 506(a)."  *In re Barrios*, 257 B.R. at 628.[20]  Notably, the only creditors treated under the debtors' chapter 13 plan in *Barrios* were unsecured, nonpriority creditors, the plaintiff's claim represented nearly 17.5% of the entire claims pool, and the plaintiff was directly affected by the result of the proceeding because the payments made to the mortgagor at issue were treated outside of the plan and, if included in the plan, would increase the debtors' monthly plan payment by over 300%.  *See id.* at 627.  The court explicitly interpreted section 506(a) as providing "no guidance in regard to standing," and only found that the creditor had standing in *Barrios* because it had a sufficient interest at stake *sub judice*.  *Id.* at 628.  Those facts are inapposite here:  Plaintiff has no sufficient interest at stake and, as such, the Plaintiff *should* be restricted from taking action under section 506 "solely on the basis of lack of standing."[21]  *Id.*

---

[20]    Additionally, in *In re McKeesport*, which the *Barrios* court used for guidance, the Third Circuit held that a utility company had standing to recover past due utility charges as an administrative expense under section 506(c) of the Bankruptcy Code because "sufficient reason" existed to allow the utility company to proceed, including that "neither the debtor in possession nor a creditors committee had reason to make a claim on behalf of [the utility company], when the debtor thereby would be required to pay for utilities it had received without charge" following its petition date.  *Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.)*, 799 F.2d 91, 94 (3d Cir. 1986).  The Third Circuit concluded that the utility company "had a colorable claim for expenses and was the only creditor that would zealously pursue that claim[.]"  *Id.* at 94.  Because its recovery was an administrative expense claim for the provision of post-petition gas service, its recovery was not subject to a chain of contingencies.  *Id.* at 95.

[21]    More appropriate than *Barrios* is the case cited therein, *In re Morrison*, which stands for the proposition that a chapter 7 trustee must "unreasonably or unjustifiably" refuse to proceed with an objection prior to conferring standing on a creditor to do so.  69 B.R. 586, 592 (Bankr. E.D. Pa. 1987); *see also The Renco Grp.*, 583 B.R. at

14.     Unlike the parties in the cases cited by the Plaintiff in its Opposition, the Plaintiff is an equity holder of an affiliate of TWC Domestic, which has no cross collateralization with the Defendants' collateral, who has failed to demonstrate how these proceedings will directly affect it even if it were successful.  The Plaintiff does not have a cognizable stake in the outcome of these proceedings.

15.     The Debtors and the Committee, who are estate fiduciaries with a direct stake in the validity of the Defendants' liens, both validated the liens and the underlying value of the collateral at issue.  Even if the Court determines the Plaintiff's claims are not barred by the plain language of the Sale Order, the Plaintiff should be barred from continuing its desperate act of self-interest because there is not a reasonable possibility that it will receive any recovery, even if the Plaintiff prevails on summary judgment.

*[remainder of page intentionally left blank]*

---

649, 653–54 (not permitting a creditor to sidestep a prior ruling on standing by using section 502(a) to get standing).  Here, while not in the chapter 7 context, the Debtors did not unreasonably or unjustifiably refuse to proceed with an objection—in fact, the Debtors built such a mechanism into the Final DIP Order and then the Committee fully pursued an investigation and concluded that the Defendants' liens and claims were valid.

01:23764036.1

WHEREFORE, the Defendants respectfully request that the Court grant the Defendants'
Summary Judgment Motion and enter judgment for the Defendants and against the Plaintiff on
all Counts in the Complaint.

Dated:    October 19, 2018          /s/ Sean M. Beach
          Wilmington, Delaware      Robert S. Brady, Esq. (No. 2847)
                                    Sean M. Beach (No. 4070)
                                    Michael S. Neiburg (No. 5275)
                                    Elizabeth S. Justison (No. 5911)
                                    YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                    1000 North King Street
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 571-6600
                                    Facsimile:  (302) 571-1253
                                    Email:  rbrady@ycst.com
                                            sbeach@ycst.com

                                    *Counsel to Defendants*

                                    -and-

                                    SIDLEY AUSTIN LLP
                                    Jennifer C. Hagle, Esq. (*pro hac vice*)
                                    Ariella Thal Simonds, Esq. (*pro hac vice*)
                                    555 West Fifth Street
                                    Los Angeles, California 90013
                                    Telephone:  (213) 896-6000
                                    Facsimile:   (213) 896-6600
                                    Email:  jhagle@sidley.com
                                            asimonds@sidley.com

                                    *Counsel to Defendant MUFG Union Bank, N.A.*

                                    -and-

                                    KATTEN MUCHIN ROSENMAN LLP
                                    William B. Freeman (*pro hac vice*)
                                    Jerry L. Hall (*pro hac vice*)
                                    515 South Flower Street
                                    Suite 1000
                                    Los Angeles, California 90071-2212
                                    Telephone:  (212) 940-8800
                                    Facsimile:  (212) 940.8776
                                    Email: bill.freeman@kattenlaw.com
                                            jerry.hall@kattenlaw.com

                                    *Counsel to Defendant UnionBanCal Equities, Inc.*