IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, et al., | ) | Case No. 18-10601 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | Adv. No. 18-50486 |
| AI INTERNATIONAL HOLDINGS (BVI) LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| MUFG UNION BANK, N.A.; as administrative and collateral agent and UNIONBANCAL EQUITIES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion for Summary Judgment filed by
MUFG Union Bank ("MUFG") and UnionBanCal Equities ("UBE")
(collectively the "Defendants") on the complaint filed by AI
International Holdings, Ltd. (the "Plaintiff") requesting a
determination that the Defendants' claims and liens are invalid,
in whole or in part.  The Defendants contend that they are
entitled to summary judgment because (1) the Plaintiff's claims
are barred by <u>res judicata</u> and (2) the Plaintiff does not allege
facts establishing it has an injury in fact to support standing
to challenge the extent, validity, or amount of the Defendants'

---

[1]    This Memorandum Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

secured claims.  For the reasons discussed below, the Court will
deny the Defendants' Motion for Summary Judgment.

I.    <u>FACTUAL BACKGROUND</u>

On March 19, 2018 (the "Petition Date"), The Weinstein
Company Holdings, LLC, and its affiliates (collectively, the
"Debtors"), filed for relief under chapter 11 of the Bankruptcy
Code.  The Weinstein Company Holdings ("Holdings") is the parent
company of Weinstein Television, LLC ("TV"), The Weinstein
Company, LLC ("Company"), and TWC Borrower 2016, LLC ("Borrower
2016"). Weinstein Global Film Corporation ("Global Film") and TWC
Domestic, LLC ("Domestic") are subsidiaries of Company.  The
Plaintiffs lent $45 million to Borrower 2016, which was secured
by Company's interests in the stock of Global Film, by Global
Film's interest in distribution and exploitation rights to
certain Foreign Film Collateral, and by Holdings' membership
interests in TV.  The Plaintiff filed proofs of claim asserting a
secured claim in excess of $46 million.

The Defendant MUFG is the administrative agent under a pre-
petition credit agreement between MUFG and Domestic, which was
guaranteed by Company.  Domestic scheduled MUFG as a secured
creditor with a claim of approximately $156 million; Company
scheduled MUFG as a secured creditor in an unknown amount.  UBE
is the administrative agent of a pre-petition security agreement

2

with Domestic, which scheduled it as a secured creditor in the amount of approximately $15 million.  Neither MUFG nor UBE have filed any proofs of claim.

The Court entered a final order authorizing the Debtors to obtain post-petition financing on April 19, 2018 (the "Final DIP Order").  (Adv. D.I. 1-13, Ex. M.)  The Final DIP Order authorized a DIP loan of up to $25 million between the Debtors and MUFG, as administrative agent for itself and the other DIP lenders.  The Final DIP Order also allowed all non-debtor parties in interest seventy-five "days from the petition date to investigate the validity, perfection and enforceability of the Pre-Petition Liens and the Pre-Petition Obligations . . . and to assert any other claims or causes of action against the Pre-Petition Secured Parties or UBE Secured Parties." (Id. at ¶ 16.) The Order stated that "nothing contained in the DIP Loan Documents or this Final Order shall be deemed to confer standing on any party-in-interest to commence a challenge" of the Defendants' claims.  (Id.)  The Order also allowed the Defendants to receive the proceeds of the sale of the Debtors' assets "subject to disgorgement to the extent any Challenge asserted in accordance with the terms of this Final Order is ultimately sustained by the Court."  (Id. at ¶ 28.)

Early in the case, the Debtors sought approval to sell substantially all of their assets to Lantern Capital ("Lantern")

3

for $310 million.  (APA Ex. P, Adv. D.I. 1-16.)  On April 6,
2018, the Court approved the Debtors' proposed bidding
procedures, but when no overbid was received, the Court entered a
Sale Order on May 9, 2018, confirming the sale to Lantern.

On June 2, 2018, the seventy-fifth day from the Petition
Date, the Plaintiff filed an adversary complaint objecting to the
Defendants' claims and seeking, inter alia, a determination of
the extent of the Defendants' security interests.[2]  11 U.S.C. §
506(a).  The Defendants filed an answer on August 27, 2018, and a
Motion for Summary Judgment on September 7, 2018.  The Plaintiff
filed a response to the Motion on October 5, 2018.  A notice of
completion of briefing was filed on October 31, 2018.  The matter
is ripe for decision.

II.  <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28
U.S.C. §§ 157(K), (N), (O) and 1334.  Further, this proceeding
requires the interpretation and enforcement of certain terms of
the Sale Order and the Final DIP Order previously entered in this
case.  "Bankruptcy courts have subject matter jurisdiction to

---

[2]  The Plaintiff alleges in its complaint that because the
Defendants did not file proofs of claim, such claims should be
disallowed pursuant to section 502(a) of the Code.  (Adv. D.I. 1
at ¶ 53.)  Further, the Plaintiff contends that the Defendants'
liens are only secured to the extent "of the value of their
interest in the estate's interest in such property" pursuant to
section 506(a).  (<u>Id.</u> at ¶ 36.)

4

interpret and enforce their own orders." <u>In re Insilco Techs.,</u>
<u>Inc.</u>, 351 B.R. 313, 319 (Bankr. D. Del. 2006) (citing <u>In re</u>
<u>Allegheny Health, Education and Research Foundation</u>, 383 F.3d
169, 175–76 (3d Cir.2004)).  Thus, the Court has subject matter
jurisdiction to hear and determine the issues raised by the
Motion for Summary Judgment.


III.  <u>DISCUSSION</u>

    A.  <u>Legal Standard</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil
Procedure, summary judgment is appropriate when the "movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(c); Fed. R. Bankr. P. 7056.  A genuine dispute of material
fact exists where a reasonable jury could return a verdict in the
non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477
U.S. 242, 248 (1986).  The Court should view the facts in the
light most favorable to the non-moving party.  <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587–88 (1986).

The moving party bears the initial burden to identify the
absence of material issues of fact.  <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 325 (1986).  This can be achieved by showing the
absence of admissible evidence which would "support an essential
element in a non-moving party's case."  <u>In re W.R. Grace & Co.,</u>

5

355 B.R. 462, 472 (Bankr. D. Del. 2006) (citing <u>Celotex</u>, 477 U.S. at 325).  The moving party cannot succeed on summary judgment by offering speculation and conclusory allegations.  <u>See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999).  If the moving party satisfies its burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec.</u>, 475 U.S. at 587.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Id.</u> at 586.  This requires the non-moving party to present "concrete evidence from which a reasonable jury could return a verdict in his favor."  <u>Anderson</u>, 477 U.S. at 256.

B.  <u>Res Judicata</u>

The doctrine of <u>res judicata</u> or claim preclusion serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promoting judicial economy by preventing needless litigation." <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 (1979).  <u>Res judicata</u> applies to bar a claim when there was a previous cause of action which came to a final judgment on the merits and then a subsequent dispute on the same issue between the same parties or their privies.  <u>See Lubrizol Corp. v. Exxon Corp.</u>, 929 F.2d 960, 963 (3d Cir. 1991) (concluding that doctrine of claim preclusion barred subsequent New Jersey action seeking

to reform a settlement agreement approved in a prior Texas action); In re SAI Holdings Ltd., No. 06-33227, 2012 WL 3201893 (Bankr. N.D. Ohio Aug. 3, 2012) (finding that res judicata barred a creditor from challenging the legal basis of the court's order).  The party asserting application of the doctrine of res judicata bears the burden of proof that it applies.  See, e.g., Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 572 (6th Cir. 2008).

The Defendants argue that summary judgment is appropriate because the Sale Order and Final DIP Order are final, non-appealable orders and therefore any collateral attack on them is precluded by the doctrine of res judicata.

     1.   Sale Order

The Defendants argue that the express provisions of the Sale Order bar the Plaintiff from challenging the allocation of the sale proceeds set forth in the APA.  See, e.g., Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A., 816 F.3d 273, 279-80 (4th Cir. 2016) (holding that a sale order was a final order on the merits and precluded challenges more than a year later which could have been made at the time of entry of the order); Winget, 537 F.3d at 577-78 (affirming decision that the plaintiff's objection to a final sale order more than a year after its entry was precluded by res judicata).  They contend that the Court specifically authorized the allocation of the sale

7

proceeds to the Defendants under the Sale Order.

However, the express language of the Sale Order belies that argument.  Paragraph 8 of the Sale Order states:

> The DIP Agent is hereby authorized to distribute the amount received by the DIP Agent, which amount shall be deemed indefeasible, to the DIP Lenders in accordance with the terms of the DIP Loan Documents.  The Pre-Petition Agent is hereby authorized to distribute the amount received by the Pre-Petition Agent, which amount shall be deemed indefeasible following the Investigation Termination Date (subject to the immediately succeeding sentence), to the Pre-Petition Lenders in accordance with the terms of the Pre-Petition Loan Documents.  <u>Notwithstanding the foregoing, any amounts paid to the Pre-Petition Agent and, as applicable, distributed to the Pre-Petition Lenders pursuant to the terms of this Order and the Final DIP Order, shall be subject to disgorgement to the extent any Challenge asserted in accordance with the terms of the Final DIP Order is ultimately sustained by the Court.</u>

(Adv. D.I. 1-16, Ex. P (emphasis added).)

The Defendants assert nonetheless that paragraph 62 of the Sale Order precludes the Plaintiff's challenge.  That paragraph reads in part:

> Notwithstanding paragraph CC of this Order and <u>except as expressly set forth in section 2.7(i) of the APA</u>, the Final DIP Order or this Order, the allocation of the Cash Purchase Price set forth in section 2.7 of the APA shall not be binding on any party in interest other than as between the Debtors and the Purchaser and shall not bind the Court in determining the allocation of the remaining proceeds of the Sale Transaction.

(Adv. D.I. 1-16, Ex. P (emphasis added).)  Section 2.7 of the APA states that:

> <u>Each of Buyer and each Seller Party hereby acknowledges and agrees</u> that the Cash Purchase Price shall be

        allocated such that (i) the value of the Purchased
        Assets that comprise the TWC Domestic Collateral is
        greater than the sum of (v) the TWC Domestic Debt (in
        the amount, as of the date hereof, of approximately
        $175 million (inclusive of the Pre-Petition Agent's
        financial advisor's deferred fee)), plus (w) the
        principal amount outstanding under the DIP Financing
        Agreement, in the form filed on the Petition Date for
        approval by the Bankruptcy Court . . . .

(Adv. D.I. 1-16, Ex. N (emphasis added).)

     By its very language, however, Section 2.7 states only an

agreement between the buyer of the assets, Lantern, and the

sellers, the Debtors.  It does not by its terms bind all other

parties to that allocation.  The Court concludes, further, that

paragraph 62 cannot be interpreted in isolation, because the

terms of the Sale Order are "nonseverable and mutually

dependent."  (Adv. D.I. 1-16, Ex. P at ¶ 63.)  See, e.g., In re

Trico Marine Servs., Inc., 450 B.R. 474, 483 (Bankr. D. Del.

2011) (concluding that court was required "to construe the Sale

Order in its entirety and interpret its provisions in a

consistent manner.") (quoting In re Cendant Corp. Sec. Litig.,

454 F.3d 235, 247 (3d Cir. 2006) ("A contract is to be considered

as a whole, and, if possible, all its provisions should be given

effect.") (internal quotation marks omitted)).

     Applying those principles, the Court concludes that even if

the allocation set forth in Section 2.7 of the APA was somehow

incorporated into the Sale Order by paragraph 62 it is still

limited by paragraph 8 of the Sale Order, which unambiguously

states that any amount distributed to the pre-petition lenders pursuant to the Sale Order "shall be subject to disgorgement to the extent any Challenge asserted in accordance with the terms of the Final DIP Order is ultimately sustained by the Court." (Adv. D.I. 1-16 at ¶ 8.)  To interpret section 2.7(i) of the APA and paragraph 62 of the Sale Order to prevent a party from raising a proper challenge pursuant to the Final DIP Order would violate the traditional canons of contract construction by nullifying paragraph 8 of the Sale Order and would indirectly modify the terms of the Final DIP Order, without notice.  See, e.g., In re Energy Future Holdings Corp., 540 B.R. 96, 104 (Bankr. D. Del. 2015) (noting that "one of the most basic interpretive canons is that a contract should be construed so that effect is given to all of its provisions and no part will be inoperative or superfluous or of no significance.").

Therefore, the Court concludes that the Sale Order does not bar the Plaintiff from prosecuting its complaint.

2.   Final DIP Order

The Defendants further argue that the Plaintiff is barred by res judicata from asserting its claims because of the terms of the Final DIP Order.  They contend that the Plaintiff cannot challenge their claims or liens because it did not comply with the terms of the Final DIP Order by performing a proper investigation and obtaining standing to bring a challenge before

filing its complaint.  <u>See, e.g.</u>, <u>11 E. 36th LLC v. First Central</u>
<u>Savings Bank (In re 11 E. 36th LLC</u>, No. 13-11506, 2016 WL 152924,
at *11 (Bankr. S.D.N.Y. Jan. 12, 2016) (concluding that an
exculpation provision in a final financing order protected the
DIP Lender and consequently <u>res judicata</u> precluded a third party
from asserting claims against the DIP Lender which were known at
the time of entry of the financing order).  This, they contend,
precludes the Plaintiff's challenge to their liens.

In response, the Plaintiff argues that it properly asserted
a challenge in accordance with the terms of the Final DIP Order,
and therefore <u>res judicata</u> cannot preclude the Plaintiff from
challenging the Defendants' claims.  The Plaintiff distinguishes
the cases cited by the Defendants, noting that in each case cited
by the Defendants the challenging party either did not raise a
challenge within the time period contemplated by the order or the
order did not allow for a challenge to be brought at all.  Here,
on the other hand, the Final DIP Order expressly allowed for a
challenge to be raised, and the Plaintiff raised such challenge
within the specified time limit.

The Court agrees that <u>res judicata</u> does not prevent the
Plaintiff from asserting its challenge.  The plain language of
the Final DIP Order specifically provides for such a challenge in
paragraph 16, which states that a non-debtor party-in-interest
has "[75] days from the Petition Date . . . to investigate the

11

validity . . . of the Pre-Petition Liens . . . and to assert any other claims or causes of action against the Pre-Petition Secured Parties." (Adv. D.I. 1-13 at ¶ 16.) The Plaintiff's complaint was filed within that time period.

The Defendants assert, however, that the Plaintiff did not bring a challenge in accordance with the terms of the Final DIP Order because the Plaintiff did not follow a three-step process. According to them, that process required that the Plaintiff (a) investigate the validity, perfection, and enforceability of the pre-petition liens and obligations; (b) be granted standing and authority by the Court to file an objection; and (c) file an objection. The entire process, the Defendants argue, must have been completed prior to the Investigation Termination Date. The Defendants contend that because the Plaintiff failed to do so, they did not comply with the Final DIP Order requirements.

### a.  Investigation

The Plaintiff responds that nothing in the Final DIP Order requires it to investigate, but merely preserves that right. The Final DIP Order allows a non-debtor party in interest a time period to raise a challenge, and that is what the Plaintiff did. The Plaintiff contends, in particular, that it would have been impractical to require a complete and detailed analysis and valuation of the film rights collateral before the challenge deadline.

The Court agrees that the Final DIP Order did not require an investigation prior to raising an objection.  The Court does not think it is reasonable to interpret the Final DIP Order to require that a non-debtor party-in-interest conduct an investigation prior to asserting a challenge to the pre-petition creditors' liens, particularly given the short time (75 days from the Petition Date) within which to do so.

### b.  Standing

The Defendants also argue, however, that the Plaintiff did not comply with the terms of the Final DIP Order because it did not seek and obtain an order from the Court granting it standing to file its challenge.  The Defendants argue that sections 506 and 502 of the Bankruptcy Code do not confer standing on an individual creditor to challenge the liens or claims of another secured creditor.  They contend that the Plaintiff's claims are estate causes of action which require derivative standing to bring them.  They further argue that Plaintiff's recovery is far too attenuated for the Plaintiff to allege any individual injury capable of redress.

The Plaintiff responds that it is scheduled as a creditor and filed proofs of claim against Holdings, Company, Global Film, and TWC Borrower in a secured amount of $46 million based on its pre-petition loan.  The Plaintiff asserts that its proof of claim is prima facie evidence of its claim.  Fed. R. Bankr. P. 3001(f)

13

("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). Thus, the Plaintiff argues that sections 502 and 506 of the Bankruptcy Code grant it standing.

                i.   <u>Standing under the Bankruptcy Code</u>

The Court agrees with the Plaintiff. Section 1109(b) expressly provides that a creditor is a party in interest with the right to "raise and . . . be heard on any issue in a case under" chapter 11.[3] Section 1109(b) of the Code means that "anyone who has a legally protected interest that could be affected by the bankruptcy proceeding is entitled to assert that interest." <u>In re James Wilson Assocs.</u>, 965 F.2d 160, 169 (7th Cir. 1992) (holding, however, that a party did not have standing in an in rem proceeding unless it had an interest in the property at issue). <u>See also</u> <u>In re Global Indus. Techs.</u>, 645 F. 3d 201, 210 (3d Cir. 2011) (concluding that a "party in interest" is one who "has a sufficient stake in the proceeding so as to require representation"); <u>In re Combustion Eng'g, Inc.</u>, 391 F.3d 190, 214 n. 21 (3d Cir. 2004) (noting that section 1109 "has been construed to create a broad right of participation in Chapter 11 cases.") (citations omitted); <u>In re Amatex Corp.</u>, 755 F.2d 1034,

---

[3]   <u>Cf.</u> 11 U.S.C. § 1121(c) ("Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, <u>a creditor</u>, an equity security holder, or any indenture trustee may file a plan if and only if . . . .") (emphasis added).

1042 (3d Cir. 1985) (holding that "Section 1109(b) continues the pattern of permitting interested parties in bankruptcy cases the absolute right to be heard and to insure their fair representation.").

Section 502(a) also states that a "claim or interest . . . is deemed allowed, unless a party in interest . . . objects." The Plaintiff has filed a proof of claim which is prima facie evidence that it is a creditor and thus a "party in interest" with standing to appear and be heard on any issue in this case, including to object to the claims of other creditors.  See, e.g., Adair v. Sherman, 230 F.3d 890, 894 n.3 (7th Cir. 2000) (holding that "if one creditor files a potentially fraudulent proof of claim, other creditors have standing to object" to it and concluding that creditor's failure to object to the claim precluded a later collateral attack); In re Mechanicsburg Fitness, Inc., No. 1:16-BK-01897, 2018 WL 5794427, at *7 (Bankr. M.D. Pa. Nov. 2, 2018) (holding that the "most natural reading of section 502(a), then, is that it confers an unfettered right upon chapter 7 creditors to object to the claims or interest of others"); In re C.P. Hall Co., 513 B.R. 540, 543 (Bankr. N.D. Ill. 2014) (allowing creditor to object to claim of another creditor because a "creditor's interest in a bankruptcy case is pecuniary, and so a creditor is a 'party in interest' with standing to object to the claims of other creditors" under

15

section 502).

Courts have also found that parties in interest, other than the trustee, have standing to seek modification of another creditor's claim pursuant to section 506(a).[4]  <u>See, e.g.</u>, <u>Gaglia v. First Fed. Sav. & Loan Ass'n</u>, 889 F.2d 1304, 1309 (3d Cir. 1989), <u>abrogated on other grounds by Dewsnup v. Timm</u>, 502 U.S. 410, 411 (1992) (holding that a debtor, in addition to the trustee, could object to a claim under § 506(a)); <u>In re Barrios</u>, 257 B.R. 626, 628 (Bankr. S.D. Fla. 2000) (holding that "general unsecured creditor which, if wholly unsecured junior mortgagee's lien was not stripped off, and if Chapter 13 debtors were allowed to continue making payments on junior mortgage debt outside plan, stood to receive lesser dividend than it would otherwise receive if debtors' payments to junior mortgagee were paid into debt adjustment plan, had standing to pursue strip off" of that lien pursuant to § 506(a)).

Thus, the Court concludes that the Plaintiff has standing under the Bankruptcy Code to assert claims under sections 502 and 506 contesting the validity of the Defendants' claims and liens.

---

[4]    Section 506 of the Bankruptcy Code governs the determination of a creditor's secured status.  It specifies that an allowed secured claim is only secured to the extent of the value of the creditor's interest in estate property, and is unsecured to the extent the value is less than the amount of the claim.  11 U.S.C. § 506(a).  The value is usually determined "in conjunction with any hearing on" disposition or use of the property in which the creditor has an interest.  <u>Id.</u>

ii.  <u>Article III standing</u>

The Defendants also argue that the Plaintiff does not have Article III standing because its alleged injury is too remote. The Defendants contend that the Plaintiff would have to satisfy seven contingencies before it could get any recovery: (1) prevailing on this summary judgment motion, (2) establishing that the value of the Defendants' collateral was less than the sale proceeds as a basis for reallocation of such proceeds, (3) proving that the pre-petition Agent's collateral had not diminished in value since the Petition Date, (4) proving that there would be funds available for distribution after all the litigation, (5) proving there are proceeds available for distribution to Global Film and TV, (6) proving that its interest in Global Film's collateral is not voidable, (7) showing that proceeds are available from its collateral in Global Film and TV.

The Plaintiff contends that it has Article III standing because if the Defendants receive more than they are entitled to, it will suffer a real injury.  The Plaintiff asserts that the Defendants are distorting the concept of standing to mean probability of success when, in fact, Article III standing only requires that a party has an injury capable of redress.  <u>See</u> <u>Schering Corp. v. Food & Drug Admin.</u>, 51 F.3d 390, 395 (3d Cir. 1995) (holding that "Article III standing is satisfied when a plaintiff demonstrates that it has suffered an actual or

threatened injury as a result of the defendant's conduct which is capable of redress") (citing Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537–38 (3d Cir. 1994)).

The Court agrees with the Plaintiff.  As a secured creditor, the Plaintiff has Article III standing to assert its rights pursuant to the Final DIP Order.  Article III standing requires only that (1) the Plaintiff suffer an actual or imminent injury in fact; (2) a causal connection exists between the Defendant's conduct and the Plaintiff's injury; and (3) there is a likelihood of redress by a favorable decision of the court.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (one asserting standing bears "the burden of showing standing by establishing, inter alia, that they have suffered an injury in fact, i.e., a concrete and particularized, actual or imminent invasion of a legally protected interest").

"The contours of the injury-in-fact requirement, while not precisely defined, are very generous," requiring only that the plaintiff identify a "personal stake in the outcome of the litigation." Global Indus. Techs., 645 F.3d at 211.  In fact, the Third Circuit has held that Article III standing and standing under section 1109(b) of the Code are effectively coextensive. Id.  Just as an injury-in-fact requires a personal stake in the litigation, so too does the party in interest element of bankruptcy standing require a sufficient stake in the bankruptcy

18

proceedings.  Id.  Thus, because the Plaintiff has standing under the Bankruptcy Code to object to the Defendants' claims, it meets the requirements for Article III standing as well.

Further, the Court rejects the Defendants' assertion that the injury to the Plaintiff is too remote to give it standing because of the numerous contingencies that must be met before it can recover.  The question is not whether the Plaintiff will win in litigation, but whether the Plaintiff has a legally protected interest that could be affected by the Defendants receiving more than the value of their liens.  Id. at 212.  See also The Pitt News v. Fisher, 215 F.3d 354, 360 (3d Cir. 2000) (concluding that for purposes of Article III standing, party must show it has an injury that is "concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical").  In this case, the Plaintiff has asserted that to the extent the Defendants receive from the sale proceeds more than the value of their secured claim, that it will be prejudiced.  Therefore, the Court concludes that the Plaintiff has asserted a legally protected interest, which could be adversely affected to the extent that the Defendants receive more than their liens are worth.

The Defendants argue that the possibility of the Plaintiff recovering is too attenuated to constitute an injury-in-fact. See, e.g., In re Flintkote Co., 486 B.R. 99, 105 (Bankr. D. Del.

19

2012), <u>aff'd</u>, 526 B.R. 515 (D. Del. 2014).  The question in <u>Flintkote</u> was whether the debtor's parent company had standing to raise an objection to confirmation.  The parent argued that it was a party in interest with standing under § 1109(b) because it was a creditor.  <u>Id.</u> at 111-13.  Its creditor status, however, was premised on a possible contribution and indemnity claim against the debtor (a) if certain asbestos personal injury claimants sued and recovered from the parent on an alter ego theory, and (b) if the parent had to remediate the debtor's environmental contamination.  <u>Id.</u> at 113.  The <u>Flintkote</u> court held that the parent had no standing, because it had not filed a timely proof of claim and could not establish excusable neglect for failing to do so.  <u>Id.</u>  Further, the court concluded that standing premised on a possible future lawsuit founded on alter ego liability was far too remote.  <u>Id.</u> at 115.

The Court finds the facts and circumstances of <u>Flintkote</u> are inapposite.  Here, there is no dispute that the Plaintiff is a creditor; it filed a timely filed proof of claim.  (Adv. D.I. 28, Ex. A.)  Further, the Plaintiff's status as a creditor is not based on any remote contingency, such as being held liable on an alter ego theory.  Instead, it is based on the fact that the Plaintiff lent funds to the Debtors.  Thus, the Plaintiff has standing under section 1109(b) to "appear and be heard on any issue in a case under this chapter."  Since that standing is co-

extensive with Article III standing, the Court concludes that the Plaintiff also has Article III standing.  <u>Glob. Indus. Techs.</u>, 645 F.3d at 211.

At this stage, the Plaintiff does not need to meet all of the contingencies listed by the Defendants in order to establish standing.  To adopt the Defendants' argument would be to require that the Plaintiff prove that it will win before being able to even assert its claim or prove its case.  This is not the standard for determining whether a party in interest has Article III standing.  It is sufficient that the Plaintiff's interest "could be affected" by the value and validity of the Defendants' liens.  <u>Glob. Indus.</u>, 645 F.3d at 210.  Summary judgment is not appropriate where there is a genuine dispute of material fact to be determined at trial.  <u>Matsushita Elec.</u>, 475 U.S. at 587.


IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny the Motion of Defendants MUFG Union Bank and UnionBanCal Equities for Summary Judgment.

An appropriate Order is attached.


Dated: December 20, 2018          BY THE COURT:

_Mary F. Walrath_
Mary F. Walrath
United States Bankruptcy Judge

21